D. KELLOGG LEITCH, GEORGE LEITCH, and DAVID K. LEITCH, by his guardian, Israel S. Spencer, *vs.* HENRY WELLS, president of The American Express Company, impleaded with The Bank of Syracuse and The Tompkins County Bank.

A testator, by his will which took effect by his death in May, 1836, gave and bequeathed unto the three executors named therein, their executors and administrators, the sum of $25,000, upon trust to pay the interest, at the rate of seven per cent per annum, to his daughter, Mrs. L., for her sole and separate use during her life, exclusive of her husband; and from and after her decease, then as to the said sum of $25,000, in trust for her child or children, living after her death; if more than one, then equally to be divided between them.

In May, 1850, all of the executors having become insolvent, a receiver was, in an action brought by a residuary legatee, appointed of the property, both real and personal, of the estate, to whom, in October, 1851, the executors, under the direction of the referee, conveyed and assigned all the said estate, "excepting and reserving a certain fund of $25,000, consisting of shares of

capital stock in the Tompkins County Bank, amounting to $12,700, and shares of the capital stock in the Bank of Syracuse, amounting to $7,300, and shares in the capital stock in the Onondaga County Bank, amounting to $5000," with the certificates and vouchers appertaining thereto, "which" (it was stated) "*has been set apart*" and appropriated by the assignors as such executors and trustees, for the said sum of $25,000; which fund was not to pass under the assignment. At the time of this conveyance, the estate owned one hundred and twenty seven shares of the capital stock of the Tompkins County Bank; ninety-nine shares of the stock of the Bank of Syracuse; and one hundred and five shares of the stock of the Onondaga County Bank; each of the par value of $100.

Subsequently the receiver, by an arrangement with the executors, reconveyed to them, as such executors, all the property remaining unadministered by him as receiver. L. and C., two of the executors, died in 1855, leaving K. the sole surviving executor.

Up to and until 1858, the said shares of bank stock which had been so set apart as and for the said fund of $25,000, remained in the hands of the executors during their joint lives, and in the hands of K. as such survivor, and stood in their names as executors on the books of the banks. In January, 1858, and August, 1858, K., by instruments in writing upon the transfer books of the banks, respectively, signed by him as executor, assigned the said shares of bank stock belonging to the estate directly to his wife P. K. without any consideration, received the scrip therefor in her own name, and said shares had ever since continued to stand in her name on the books of said banks. She subsequently signed blank powers of attorney for the transfer of the bank stock, and delivered the same to K.

On the 30th of May, 1862, K., to secure a loan of $1100 to him from the American Express Company, caused the ninety-nine shares of stock in the Bank of Syracuse to be transferred to the express company, by delivering to it scrips of said stock, standing in the name of his wife, with a blank power of attorney attached, signed by her, but not acknowledged. Such stock was never transferred to the company on the books of the bank.

On the 25th of March, 1864, K., to secure a further loan of $10,000 to him from the same company, caused one hundred and seven shares of the stock of the Tompkins County Bank, standing in his wife's name, to be transferred to the company by delivering to the company a scrip for said one hundred and seven shares, with a blank power of attorney attached, executed by his wife; but no transfer of said one hundred and seven shares was ever made to the company on the books of the bank.

In November, 1861, Mrs. L. and her children commenced an action against K. and his wife to recover the legacy given to them, claiming the stock in the Tompkins County Bank, as having been set apart for their benefit, as a portion of the legacy of $25,000, and that the transfer thereof by K. to his wife was without consideration and void. Mrs. L. died October 3, 1862. The action was continued in the names of her administrators and children.

Leitch *v.* Wells.

In November, 1863, a supplemental complaint was served, in which it was alleged that the seventy-three shares of stock in the Bank of Syracuse was also set apart as a portion of said fund of $25,000, and that the same had also been transferred by K. to his wife, without consideration; and claiming that all of said stocks belonged of right to the plaintiffs. The court decreed, in that action, that by the setting apart of said stocks Mrs. L. and her children became the owners and vested with the absolute title thereto; and that the sale and transfer to P. K. was void, and vested in her no title to the same.

The first loan from the express company to K. was obtained, and the transfer of stock to secure the same made, while the action upon the *original complaint* was pending. But that company, at the time of such loan and transfer, had no actual knowledge of the pendency of that action; or of any claim of Mrs. L. or her children to the stocks; or that K. was an executor and trustee under the will of the testator. And no injunction was obtained, or receiver applied for, in that action.

The express company, claiming to own the stocks so assigned to it, had demanded of the Bank of Syracuse and of the Tompkins County Bank that they should severally transfer to it the stock so standing on their books in the name of P. W.; and the company, on demand, refused to deliver to the plaintiffs in this suit, the children of Mrs. L., the scrip for said stocks.

*Held* 1. That the testator, by his will, created a trust fund of $25,000, out of his estate, which he conveyed thereby to his executors, to the income of which Mrs. L. was entitled, during her life; and that at her death, the principal of the fund vested in her children her surviving; but that no particular property being designated by him as constituting such fund, the same remained with, and constituted a part of, the whole of the estate of the testator in the hands of his executors; and while so situated, a transfer by the executors, of the specific property constituting the estate, would convey a good title to the purchaser, unless he was a party to a fraud to be perpetrated by such transfer.

2. That when the executors, in October, 1851, executed the assignment to the receiver, of all the residue of the estate, except the fund for the payment of the $25,000, and excepted thereout and set apart, in express terms, the seventy-three shares of stock in the Bank of Syracuse, the one hundred and twenty-seven shares of stock in the Tompkins County Bank, and the fifty shares of stock in the Onondaga County Bank, it became thereby separated from the residue of the estate, and the relation of the executors became charged, so that thereafter their interest in it was merely that of trustees; while all their duties as executors, only, became vested in the receiver.

3. That in view of the facts, that the shares of stock so set apart were separated from a larger amount of stocks in the same banks, owned by the estate; that they were so continued separate until the transfers from K. to his wife; and that although such transfer to her included larger amounts of stock, the scrip issued to P. K. for seventy-three shares of stock in the Bank of Syracuse, and produced in evidence, showed that such transfer

Leitch *v.* Wells.

of the residue must have been made in separate scrip; it was not only clear that the executors impressed it with the character of a trust fund, as and for the said fund of $25,000, but that they had no power afterwards to change the fund, without the consent of the *cestuis que trust,* or the order of the court.

4. That Mrs. L. was entitled to the *whole* net income of the stocks, during her life, and her children were entitled to the stocks at her death; and if, at any time after the trust was created, they had become worthless, from the failure of the banks, the loss would have fallen upon Mrs. L. and her children; provided there was no fraud, or want of good faith, on the part of the trustees.

5. That the plaintiffs had the equitable title to the stocks in question, which vested in them at the death of their mother, Mrs. L.; and they had a right to require of the surviving executor a transfer of the scrip to them, and were entitled, after the death of their mother, as her next of kin, to an accounting by the executor, for the income which he had received from the stocks, and any income not paid over which he had received on the trust fund of $25,000 before it was merged in the stocks.

6. That while the action brought by Mrs. L. against K. and his wife, to accomplish these purposes, and continued by her administrator and children, after her death, was pending, the express company could not acquire the legal title, legal or equitable, to the Tompkins County Bank stock, against the present plaintiffs; because not only was that action pending when the company took the assignment of the stock, but the complaint therein *specifically* claimed the *stock* as a part of the trust fund; and as to that stock, the decision in the case, which held that the stock vested in, and belonged to, the plaintiffs, concluded the express company.

7. That such action being pending at the time of the assignment of the seventy-three shares of stock in the Bank of Syracuse, by P. K. to the express company, it was notice to the company as to any thing which was part of the trust between the plaintiffs and K., on account of which the action was commenced, whether specifically stated or not; provided it could be brought into that action as constituting a part of the trust. That the decision in such action was therefore conclusive upon the express company as to that stock also, notwithstanding the complaint did not *specifically* claim it as belonging to the plaintiffs.

8. That P. K. being a married woman, and the wife of K., she could not take a legal title to the stock by a direct transfer of it to her by her husband, merely because he held the stocks as executor; any more than if they had been his own.

9. That the express company did not in *form,* even, acquire a *legal* title to the stock; the transfers not being made on the books of the bank; which was necessary to pass the legal title.

10. That at most the express company took but an equitable title to the stocks; and if so, such equitable title must give way to the prior and superior equity of the plaintiffs.

Leitch *v.* Wells.

11. That the pendency of the action against K. and his wife was notice to the express company; and the judgment rendered therein made void its purchase of the stock of the Bank of Syracuse, as well as of the stock of the Tompkins County Bank.

12. That independent of that action, the express company acquired no title to the stocks, as against the plaintiffs.

APPEAL from a judgment rendered in favor of the plaintiffs, at a special term, before MORGAN, Justice. The material facts are stated in the opinion.

*Van Vorst & Bradley,* for the appellant.

*Pratt, Mitchell, & Brown,* for the respondent.

*By the Court,* FOSTER, J. The action was brought to compel the defendant, The American Express Company, to transfer to the plaintiff 107 shares of the capital stock of The Tompkins County Bank, and 73 shares of the capital stock of the Bank of Syracuse ; and account for and pay over to the plaintiffs the dividends which it had received thereon ; to enjoin it from transferring the stock to any other person ; and to have the same declared and adjudged to be the property of the plaintiffs. Also to restrain the other defendants from transferring the said shares of the capital stock to their respective banks, or allowing the same to be transferred on their books, to any person other than the plaintiffs.

The issues joined in the action were tried before his honor Justice MORGAN, at an adjourned special term, in June, 1865, and his findings of fact, which were supported by the evidence, are, in substance, as follows :

Daniel Kellogg, late of the town of Skneneateles, died in May, 1836, leaving a last will and testament, and appointing George F. Leitch, John Kellogg and David A. Comstock, executors. He left a large personal estate. The will was duly proved, and all of the executors qualified and entered upon their duties as such.

One clause of the will gave and bequeathed " unto the said John Kellogg, George F. Leitch and David A. Comstock, their executors and administrators, the sum of $25,000 upon trust to pay the interest, at the rate of seven per cent per annum, of the said $25,000, to my daughter, Catharine K. Leitch, for her sole and separate use during her life, exclusive of her husband, and for which her receipt alone shall be suffi-cient discharge ; and from and after the decease of my said daughter, Catharine, then as to the said sum of $25,000, in trust for her child or children living, after her death ; if more than one, then equally to be divided between them."

In 1848, Augustus L. Converse, as administrator of Mary Ann Converse, who was one of the daughters of Daniel Kel-logg, and one of the residuary legatees, commenced an action against all of the executors, to compel the payment of her residuary interest in the estate ; and in May, 1850, all of the executors having become insolvent, upon proceedings taken in that action, Elias W. Leavenworth was appointed receiver of the property, both real and personal, of said estate, and the executors were ordered by the court to convey and assign to the receiver, under the direction of a referee appointed by the court, all of said estate then in their hands.

On the 10th day of October, 1850, the executors, in pur-suance of the order of the court, by an instrument under their hands and seals and under the direction of the referee, con-veyed and assigned to the receiver all the said estate, both real and personal, " excepting and reserving from this assign-ment a certain fund of $25,000, consisting of shares of capital stock in Tompkins County Bank, amounting to $12,700, and shares of the capital stock in the Bank of Syracuse, amount-ing to $7300, and shares in the capital stock in the Onondaga County Bank, amounting to $5000, making the said sum of $25,000, with the certificates and vouchers pertaining thereto, *which has been set apart* and designated and appropriated by the said parties of the first part as such executors and trustees, as for the sum of $25,000 given to them in and by

the said will of Daniel Kellogg, deceased, in trust to pay the interest thereof to Catharine K. Leitch, wife of the said George F. during her life time, and then in trust for her children, which fund is not to pass under this assignment."

At the time of this conveyance, the estate of Daniel Kellogg owned 127 shares of the capital stock of the Tompkins County Bank, the par value of which was $100 per share ; 99 shares of the stock of the Bank of Syracuse, of the like par value ; and 105 shares of the stock of the Onondaga county Bank, of the like par value.

George F. Leitch and David A. Comstock died in the year 1855, and John Kellogg continued the sole surviving executor ; but previous to their death, an arrangement was made between the executors and the other parties to the suit which Converse had commenced against them ; in pursuance of which, Leavenworth, the receiver, reconveyed to them as such executors all the property remaining unadministered by him as such receiver ; and up to, and until 1858, the said shares of bank stock which had been so set apart as and for the said fund of $25,000 remained in the hands of the executors during their joint lives ; and in the hands of John Kellogg as such surviving trustee, and stood in their names as executors, on the books of the said banks ; and for a portion of the intermediate time, the dividends thereon were paid over to Catharine K. Leitch, towards the income of the said fund of $25,000.

On the 2d day of January, 1858, John Kellogg, by an instrument in writing upon the transfer book of the Tompkins County Bank, signed by him as executor of said Daniel Kellogg, deceased, assigned the said 127 shares directly to his wife, Paulina W. Kellogg ; and on the second day of August, 1858, by like instruments in writing upon the transfer books of the said Bank of Syracuse, and the said Onondaga County Bank, assigned to said Paulina W. Kellogg the said 99 and 105 shares of the said banks, respectively ; and he received the scrip therefor, as well as the scrip for the 127 shares, in

her name, in the usual form therefor ; and the 127 shares of the Tompkins County Bank, and the 73 shares of the Bank of Syracuse which were set apart as part of said fund of $25,000, have ever since continued to stand in her name on the books of said banks.

Soon after the transfer of said stocks to Paulina W. Kellogg, she, at the request of John Kellogg, signed blank powers of attorney, in the usual form, for the transfer of stocks in corporate companies, and delivered them to him ; and she never, until that time, knew that the stock had been assigned to her. She never had the possession of any of the scrip. John Kellogg received the dividends upon it, the same after the assignment to her, as before, and the assignment was made to her without any consideration therefor.

In November, 1861, Catharine K. Leitch and the plaintiffs in the suit commenced an action against John Kellogg and Paulina Kellogg for the purpose of recovering the said legacy and the unpaid interest thereon ; and duly impleaded them in the action ; and, among other things, claimed in their complaint, that the 127 shares of the capital stock of the Tompkins County Bank were set apart for the benefit of the said Catharine and her children, as a portion of the legacy of $25,000 so bequeathed to said executors upon trust, as aforesaid, and was treated by the said Leitch, in his lifetime, and by the said John Kellogg, as a trust fund in his hands for the benefit of the said Catharine and her children until he caused the same to be transferred to Paulina W. Kellogg, as aforesaid. And it further claimed that such transfer was without consideration, and was void. The defendants in that action answered the complaint, and afterwards Catharine K. Leitch died, on the 3d day of October 1862, intestate, leaving the plaintiffs in this action her only surviving children and heirs at law.

After the death of Catherine K. Leitch, that action was continued in the name of her administrators, and the present plaintiffs, as plaintiffs therein ; and on the 30th day of No-

vember, 1863, a supplemental complaint was moved therein, in which, among other things, it was alleged that the said 73 shares of the capital stock of the Bank of Syracuse was also set apart as portion of said fund of $25,000, and that the same had been also transferred by said John Kellogg to his said wife without her knowledge, and without any consideration therefor. And it was claimed that all of said stocks belonged, of right, to the plaintiffs. To which supplemental complaint, the defendants, John Kellogg and Paulina W. Kellogg, put in their answer.

While the action was pending, *upon the original complaint*, and on the 30th day of May, 1862, John Kellogg applied to the American express Company for a loan of $11,000 upon his own note ; and proposed to secure it with 124 shares of the capital stock of the Bank of Syracuse. He obtained the money—executed his note to the Express company for the amount, and caused the stock to be transferred, by delivering to the express company scrips of the stock of said bank, standing in the name of Paulina W. Kellogg, one of which scrips was in the following words : " $7300. This certifies that Mrs. Paulina W. Kellogg is entitled to seventy-three shares in the capital stock of the Bank of Syracuse, transferrible, on the books of the bank, only by herself, or her attorney duly constituted ; one hundred dollars on each share of which is hereby acknowledged to have been received. Bank of Syracuse, August 2d, 1858.

73 shares.        (Signed,)        O. BALLARD, Cashier." .

Attached to which scrip, was a power of attorney, signed by Paulina W. Kellogg, in blank, but in the usual form, without acknowledgment by her ; but the stock has never been transferred to the American Express Company on the books of the bank.

On the 25th of March, 1864, John Kellogg applied to the American Express Company for another loan of $10,000, and obtained it upon his own note secured by a transfer of 107

shares, being part of the said 127 shares of the capital stock of the Tompkins County Bank, which was standing in the name of said Paulina W. Kellogg, which transfer was made by delivering to the express company a scrip for said 107 shares, in the name of Paulina W. similar in form to the one for the 73 shares of the stock of the Bank of Syracuse, and with a blank power of attorney executed by her for the transfer thereof, similar to the one in reference to the stock of the Bank of Syracuse; but no transfer of the 107 shares of stock has ever been made to the express company, on the books of the bank.

Afterwards, the issue in that action was tried, and on the 12th day of September, 1864, judgment rendered, by which it was ordered and adjudged, that by the setting apart of said stock by the executors, the said 127 shares of the capital stock of the Tompkins County Bank, and the said 73 shares of the capital stock of the Bank of Syracuse, were held by John Kellogg from the time of such setting apart until the death of said Catherine Leitch, in trust, to pay the annual income thereof to her; and that upon her death, the plaintiffs in this action, her children, became the owners, and vested with the absolute title to said stock; and that the same from that time had continued to be, and, still were, vested in these plaintiffs, together with all unpaid dividends thereon; and that the pretended sale and transfer of the stock to the said Paulina was void, and vested in her no title to the same.

The express company, at the time of making such loans to John Kellogg, and receiving the assignments of the stock, had no actual knowledge of the action which was pending between these plaintiffs and their mother against John and Paulina W. Kellogg, or of any claim of the plaintiffs in this action to the stocks in question; or that John Kellogg was an executor and trustee under the will of David Kellogg. And no injunction was obtained in that action restraining the transfer of the stock during the pendency thereof; and no receiver was applied for.

Before the commencement of this action, the express company claimed to own the stocks so assigned to it, and had demanded of the Bank of Syracuse, and of the Tompkins County Bank, that they should severally transfer the said stocks so standing on their books in the name of Paulina W. Kellogg, to the express company, and the express company, although the same had been demanded by the plaintiffs, had refused to deliver to them the scrip for said stocks.

The judge before whom the action was tried, at special term, without a jury, ordered a judgment for the plaintiffs, according to the prayer of the complaint.

It is perfectly clear, that by the clause in the will of David Kellogg, which is hereinbefore recited, he created a trust of a fund of $25,000 out of his estate, which he conveyed thereby to his executors, to the income of which Mrs. Leitch was entitled during her life, and that at her death the principal of the fund vested in her children her surviving ; but no particular property was designated by him as constituting such fund, and the same remained with, and constituted a part of the whole of the estate of the deceased in the hands of his executors ; and there can be no doubt, upon sound principles, that while so situated, a transfer by the executors of the specific property constituting the estate, would convey a good title to the purchaser, unless he was a party to a fraud to be perpetrated by such transfer.

When the executors, in October, 1851, in pursuance of the order of the Supreme Court, executed an assignment (under their hands and seals, and under the direction of a referee,) to the receiver Leavenworth, of all the residue of said estate, except the fund for the payment of the $25,000 and interest thereon ; and excepted thereout, and set apart in express terms the 73 shares of stock in the Bank of Syracuse, the 127 shares of stock in the Tompkins County Bank, and the 50 shares of stock of the Onondaga County Bank, it became thereby separated from the residue of the stock of the deceased, and the relations of the executors became changed, so

that thereafter their interest in it was merely that of trustees, while all their duties, as executors only, became vested in the receiver. And when the additional fact appears, that at that time the estate owned, in all, 127 shares of the Tompkins County Bank, 99 shares of the Bank of Syracuse, and 105 shares of the Onondaga County Bank ; and that the shares so set apart to constitute the trust fund, were separated from the residue of those stocks ; that they were so continued separate until the transfer from John Kellogg to his wife ; and although such transfer to her included larger amounts of stock, the scrip produced in evidence shows that such transfer of the residue must have been made in separate scrip. It is not only clear, that the executors impressed it with the character of a trust fund, as one for the said fund of $25,000, but that they had no power afterwards to change the fund without the consent of the *cetuis que trust,* or the order of the court.

There is no doubt, under the facts of this case, that Mrs. Leitch was entitled to the *whole* net income of the stocks during her life ; that the plaintiffs were entitled to the stocks at her death ; and if, at any time, after the trust was created, they had become worthless from the failure of the banks, the loss must have fallen upon Mrs. Leitch and the plaintiffs, provided there was no fraud, or want of good faith, on the part of the trustees.

The plaintiffs, then, had the equitable title to the stocks in question, which vested in them at the death of their mother ; and they had a right to require of the surviving executor a transfer of the scrip to them, and they were entitled, after the death of their mother, as her next of kin, to an accounting by the executor for the income which he had received from the stocks, and any income not paid over which he had received on the trust fund of $25,000, before it was merged in the stocks. And to accomplish these purposes, the action was originally brought by their mother and the plaintiffs, during her life, against John Kellogg and his wife ;

and continued by the plaintiffs, and her administrator, under the supplemental complaint which was filed after her death.

The questions, therefore, are; *could* the express company, while that action was pending, acquire a title, either legal or equitable, to the stock, or any part of it, as against the plaintiffs, though it had no direct notice of the trial, or claim of the plaintiffs, and though it paid the full value of it? And if it could, then *did* it acquire a title to it which was superior to that of the plaintiffs?

Under our statutes, where the title to *real estate* is concerned, the pendency of an action therefor is not notice to a stranger until the notice of *lis pendens* is actually filed; and if in such case he has no actual notice, he may, in good faith, and for a good consideration, acquire the legal title, and maintain it against a party who claims the equitable title.

The rule, however, which applies to *personal* estate, and which at common law applies to all estates, is general, that *lis pendens* is a general notice of an equity to all the world, (*Bouvier's Law Dic.* title Lis pendens ; *Murray* v. *Ballou,* 1 *John. Ch.* 577 ; and *Murray* v. *Lylburn,* 2 *id.* 444;) where it is said " there is no principle better established, nor one founded on more indispensable necessity, than that the purchase of the subject matter ·in controversy *pendente lite,* does not vary the rights of the parties in that suit, who are not to receive any prejudice from the alienation. If the *cestui que trust* be entitled, as between him and his trustee, to take the securities for the land, at his election, it ought not to be in the power of the trustee to defeat that election by selling the securities. The litigating parties are not to have their right affected by any alienation during the pendency of the suit." (*And see also Hayden* v. *Bucklin,* 9 *Paige,* 514, 515 ; and cases cited in *Bouvier's Law Dic. supra.*)

It is, therefore clear, that the express company could not acquire the title, legal or equitable, to the Tompkins County Bank stock against these plaintiffs; because, not only was the

action above mentioned pending when it took the assignment of the stock, but the complaint which had been filed and served, *specifically* claimed *that stock* as a part of the trust fund; and as to that stock, the decision in the case, which held that the stock vested in and belonged to the plaintiffs, concluded the express company..

It is not so perfectly clear in regard to the seventy-three shares in the Bank of Syracuse; for at the time of the assignment of it to the express company, although the action was pending, the complaint did not *specifically* claim it as equitably belonging to the plaintiffs. But I have come to. the conclusion that the action, as it then stood, was notice to the express company as to any thing which was part of the trust between the plaintiffs and John Kellogg, on account of which the action was commenced, whether specifically stated or not, provided it could be brought into that action as constituting part of the trust. And yet it must be conceded that there is no *lis pendens*, so as to charge strangers, until *after the filing of the bill* or *complaint*, as well as the service of the subpœna or summons, upon the defendant. (*Anonymous Case*, 1 *Vern.* 318. *Supplement to Vesey, Jr. vol.* 1, 284. *Hayden* v. *Bucklin*, 9 *Paige*, 514, 515. *Bouvier's Law Dic.* title *Lis pendens*, 2.)

I have said that the original complaint in that action did not specifically claim the shares of stock in the Bank of Syracuse; but it did claim, among other things, that in or about the year 1849, John Kellogg received from Leitch, his co-executor, 300 shares of the capital stock of the Bank of Syracuse; 100 shares of the Onondaga County Bank; 127 shares of the Tompkins County Bank; together with other property belonging to the estate of Daniel Kellogg. That afterwards he had transferred the same to his wife, without consideration, and for the purpose of defrauding the plaintiffs. The complaint also averred that the plaintiffs were not informed whether the whole of said legacy of $25,000 was ever set apart and invested by the executors as directed by the will;

but that they were informed and believed that the 127 shares of the Tompkins County Bank were set apart as a portion of the said legacy, and so kept till transferred to his wife as aforesaid. It also claimed that he was insolvent, but that he had the charge and control of a large amount of property held ostensibly in the name of his wife, consisting of *bank stocks*, bonds and mortgages, and real estate, amply sufficient to satisfy the legacy and the interest and income thereof; and that the same was a portion of the estate of Daniel Kellogg, &c. The complaint demanded an account by John Kellogg of his trust; and also an account by his wife of the money, choses in action, or other property then in her hands, being the proceeds of the estate of Daniel Kellogg; and that she be compelled to convey to the plaintiffs a sufficient sum, or amount, to make up any deficiency; and that John Kellogg be removed from his trusteeship, and for further relief.

As between the plaintiffs in that suit and John Kellogg and his wife, it was not necessary to insert in the supplemental complaint the allegations that the Syracuse Bank stock was also a trust, as part of the fund of $25,000. In the original complaint, enough had been alleged to require John Kellogg and his wife to account as to all things concerning the original legacy of $25,000, and to enable the plaintiffs to follow it through any mutations or changes which had occurred, unless it had become the property of a *bona fide* owner; and if upon the accounting in that action it appeared that the seventy-three shares had become a trust fund, then, without any amendment of the original complaint, (which contained a general prayer for relief,) the court could have given the same judgment that it did, to wit, that it belonged in equity to the plaintiffs, and was vested in them at the death of their mother.

It was not, therefore, a collateral matter, but was within the *original* issue, and was really as much a part of the subject in issue *then*, as it was afterwards under the supplemental complaint. And the farthest that any case has gone

(which has come to my knowledge,) in deciding that a *lis pendens* is not notice to a stranger, who becomes a purchaser of personal estate, in good faith, and for valuable consideration, during the continuance of the action, is that of *Worsley* v. *The Lord of Scarborough*, (3 *Atk.* 392,) where, while it is expressly held that all persons who purchase a right in litigation are bound to take notice of what is transacting there, and are bound by the result, it is said, " *Thirdly.* No case has gone so far, and it would be very inconsistent if, where money is received upon an estate, and there is a question depending in this court upon the right of, or about that money, *but no question relating to the estate upon which it is received, but is wholly a collateral matter, that a purchaser of the estate,' pending that suit, should be affected with notice,* by such implication as the law creates by the pendency of a suit." (*And see* 1 *Vesey's Supplement*, 284 ; *Self* v. *Madox*, 1 *Vern.* 459.) And it is quite as reasonable that a person who purchases *pendente lite* a chose in action not negotiable, (and when a purchaser ordinarily has to look to his vendor as his security for title,) which is in litigation in the action, should carefully inquire into the right of his vendor or assignor, as it would be to require of a *cestui que trust*, who commences a suit to recover the trust fund, that he should know and set out with precision, in his complaint, the changes which his trustee has fraudulently made of the trust fund. It is sufficient that he commences his suit to recover the fund, and sets out enough to enable those who desire to do so, to ascertain how far the litigation may extend ; and what property, or rights to property, may be involved in the decision. All this was done in that action, and it was the duty of the express company, as between it and the plaintiffs, to learn what were the real rights of Mrs. Kellogg to the stock which she assigned to it. And it will be recollected that in the action against Kellogg and wife, there was no dispute about the legacy of $25,000, nor but that the mother and the present plaintiffs were entitled thereto ; nor but that it came to the hands of John Kel-

·logg in some form ; nor but that he was responsible for it ; but .the real and only issue under the original complaint, as well as under the supplemental complaint, was what he had done with the fund, and how invested it ; and to what property or persons could the plaintiffs resort for its recovery.

The express company was also bound to take notice that the action was brought to remove John Kellogg as trustee, and for an accounting, and that he could not, therefore, while the action was pending, dispose of the trust fund, and was bound to inquire into the equities of himself and wife. And there is the more reason why it should be so, as the loans, to secure which the notes were given, and the stock assigned, were made to him. (*Murray* v. *Ballou*, and *Murray* v. *Lylburn, supra.*)

But independent of the action which was pending when the stocks were transferred to the American Express Company, did it acquire any title to them, either legal or equitable, superior to that of the plaintiffs ? I have already shown that they became a part of the trust fund long before they were so transferred. And from that time the plaintiffs had an equitable interest in them, which became vested in them as owners at the death of their mother ; and they were then entitled to a transfer to them of the legal title, not only as against John Kellogg, but also as against his wife ; and the court, in the action between them, so adjudged. Still, if it be the law that *that* action was not notice to the express company, then the questions as to the rights acquired from John Kellogg by his wife, and of the express company, derived from her, must be determined without resort to the judgment rendered in that action.

I need not spend time to prove, although Mrs. Kellogg, in form, took the legal title to the stock, in virtue of the transfer to her by her husband, that her title was fraudulent ; and that as between her and the plaintiffs, her claim to the stock, both at law and in equity, was void. If, however, she had the legal title, she might transfer one to a purchaser without

notice and for a valuable consideration, notwithstanding her own title was fraudulently acquired, and hence it is important to inquire, in the first place, whether she ever had the legal title to transfer ?    She was a married woman, and the wife of John Kellogg, and she could not take a legal title to the stock by a direct transfer of it to her by her husband. Certainly she could not do so, if the stock had been his own; for, as a legal transfer, it would have been void ; and the principle is not disputed, on the part of the defendant. But it is claimed, inasmuch as the stocks were in his hands, as executor, that he had the same right to transfer it to her, directly, that he had to transfer it to a stranger. No authority in support of such a proposition is cited by the defendant's counsel, and I have not been able to find any ; and there is no reason, that I can discover, why such a rule should prevail.

The reason why a husband cannot convey a legal title directly to his wife, is not because the subject matter of the contract belongs to one of them, but because their relation to each other is such that they cannot make a legal contract with each other ; and when equity is invoked to give to one or the other of them relief, it is confined to cases where it is called upon to protect the prior interests of the one or the other. And even equity would not interfere to protect a married woman, in a contract with her husband, where she had no prior interest to protect, and where she had paid no consideration.    The policy of the law is to prevent legal bargains by married women with any person whatsoever, and especially with their husbands, except so far as they have been authorized to contract, by statute.

Mrs. Kellogg took, then, at most, so far as the defendant can claim, a mere equity.    As such, it was subordinate to the equity of the plaintiffs.    Theirs was a prior equity, and founded in justice.    Hers was subsequent in point of time, acquired after theirs had accrued, and was fraudulent ; and on the part of her husband, it was iniquitous.    In truth, she

had no equitable interest in the stocks, as against any one. I might rest the case here, upon this branch of it, because if she had but an equitable title at best, though in form it was a legal one, as between the plaintiffs and the express company, it could take no better title than she had to transfer.

But the express company was bound to know that Paulina W. Kellogg was a married woman; and should have made the inquiry, if it did not know it ; and was bound to know that she had no right to sell, assign, or transfer stocks unless they were part of her separate estate, acquired in conformity to the statutes which allow a married woman to dispose of her separate property. The defendant was therefore bound to inquire how she became possessed of the stocks, and was chargeable with notice of how that was; and was chargeable with knowledge that being such married woman, and having derived her title to the stocks from her husband, that *she* had no legal title to them ; and it was the further duty of the company to inquire what the title of her husband was ; and it appearing that the transfer of the stock from her was delivered by her husband, and as collateral security for his own debts, the express company cannot complain that the security which it so obtained should yield to the prior and superior equity of the plaintiffs.

Again ; the express company did not, in *form*, even, acquire a *legal* title to the stocks ; the transfer was not made on the books of the banks, which was necessary to pass a legal title. (*Laws of* 1836, *p.* 511, § 27, *and Laws of* 1838, *p.* 249, § 19.)

It therefore, at all events, took but an equitable title to the stocks ; and if so, it cannot be disputed that *that* equitable title must give way to the prior and superior equity of the plaintiffs.

1st. Then the pendency of the action against Kellogg and his wife, was notice to the express company, and the judgment therein made void its purchase of the stock of the Bank

of Syracuse, as well as of the stock of the Tompkins County Bank.

2d. Independent of that action, the express company acquired no title to the stocks, as against the plaintiffs.

The judgment of the court below should be affirmed, with costs.

[ONONDAGA GENERAL TERM, April 2, 1867. *Morgan, Mullin* and *Foster,* Justices.]