## WELLS v. CAYWOOD.

1. The act of February 12, 1874 (Sess. Laws, p. 185), concerning married women, is an enabling statute, and must be liberally construed to effectuate the purposes of its enactment.

2. Under the statute a *femme covert* is no longer *sub potestati viri*, in respect to the acquisition, enjoyment and disposition of real and personal property.

   She may do with her own property as she will, without reference to any restraints or disabilities of coverture.

   She may make conveyance directly to her husband. The removal in respect to the wife of a disability that is mutual, and springing from the same source, removes it also as to the husband, and the husband may, acting in his own right, convey directly to the wife.

3. It is only in the absence of an express agreement that the law will not permit a trustee to become a purchaser at his own sale. Where the right to purchase is clearly conferred by the instrument appointing him, the law imposes no impediment to the validity of a sale so made.

4. In order to enable a purchaser at a trustee's sale to maintain ejectment, it does not devolve upon him to show that the trustee has complied with the conditions prescribed by the deed of trust. The deed to the purchaser may not be impeached on that ground by the defendant in ejectment.

5. A defendant in ejectment cannot show want of fraud in, or illegality of the consideration in a deed, under which the plaintiff claims title.

6. An entry of the word "homestead" on the margin of a recorded title under the statute (R. S., p. 385) is effective only from the time of such entry, and the fact that the wife did not join with her husband in the execution of a trust deed made prior to such entry will not invalidate the trust deed.

*Appeal from District Court of Boulder County.*

EJECTMENT. The plaintiff below had judgment. The facts are sufficiently stated in the opinion. The trustee's

deed adverted to by the court, and under which plaintiff claimed title, is as follows:

"This indenture, made the ninth day of October, in the year of our Lord, one thousand eight hundred and seventy-five, between William W. Caywood, as trustee of Albert W. Benson and C. D. Caywood, of the county of Boulder, and Territory of Colorado, party of the first part, and Catherine D. Caywood, of the county of Boulder, and Territory of Colorado, party of the second part, witnesseth that: Whereas, Albert W. Benson, of the county of Boulder and Territory of Colorado, did, by certain trust deed, dated the 11th day of August, A. D. 1873, which said deed was recorded in the office of the county clerk, and recorder of the county of Boulder, in the Territory of Colorado, on the 13th day of August, A. D. 1873, in book T, on page 135, convey to said party of the first part, all the premises hereinafter described, to secure the payment of a certain promissory note in said deed particularly mentioned, and upon certain conditions in said deed particularly declared. And whereas, default hath been made in the payment of said note and interest, and the said premises having by the said party of the first part been duly advertised for public sale at the front door of the court-house, in the county of Boulder and Territory of Colorado, on the 9th day of October, A. D. 1875, for the period of over thirty days, and in the manner prescribed by said trust deed were, upon the day and year, and at the place last mentioned aforesaid, in pursuance of said notice, sold at public sale, and at the said sale the said party of the second part was the highest and best bidder therefor, and bid for the tract hereinafter described the sum of three hundred and thirty-five (335) dollars.

Now, therefore, these presents witness that the said party of the first part, in pursuance of the power and authority in him vested, in and by said trust deed, and in consideration of the sum of one dollar, and also the further sum of three hundred and thirty-five dollars, by the said party of

the second part paid, the receipt whereof is hereby acknowledged, hath and doth hereby convey, remise, release and quit-claim to said party of the second part, her heirs and assigns forever, all the right, title and interest, as well in law as in equity, which the party of the first part hath acquired by virtue of the trust deed above mentioned, of, in and to all the following described tract, piece or parcel of land, situate, lying and being in the county of Boulder, and Territory of Colorado, to wit: Lot number one (1), in block number forty-eight (48), in the town of Longmont, in said county, together with all and singular the tenements, hereditaments and appurtenances thereto belonging or in any wise appertaining, and the reversions, remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in and to the same and any and every part thereof, with the appurtenances which the said party of the first part acquired by virtue of said trust deed. To have and to hold the aforesaid right, title and interest of said party of the first part unto the said party of the second part, her heirs and assigns forever, as fully and absolutely as the said party of the first part can, by virtue of the power and authority in him vested by said trust deed, convey the same.

In witness whereof, the said party of the first part has hereunto set his hand and seal the day and year first above written.

(Signed) WILLIAM W. CAYWOOD, *Trustee.* [SEAL.]

Mr. JOHN H. WELLS, *pro se,* and Mr. B. L. CARR, of counsel.

Mr. GEORGE L. REYNOLDS, for appellee.

THATCHER, C. J. This was an action of ejectment brought by the appellee against the appellant in the court below. On the 11th day of August, 1873, Albert W. Benson being at the time the owner in fee of the premises in dispute, made

a promissory note for the sum of $250, payable to Catherine D. Caywood, the wife of William W. Caywood, two years after the date thereof. On the same date, to secure the payment of this note, Mr. Benson conveyed to William W. Caywood, as trustee, the disputed premises, with power to sell and dispose of the same at public auction in the manner prescribed in said deed of trust, in case the grantor therein should make default in the payment of the promissory note, or any part thereof, or the interest thereon, and to make, execute and deliver to the purchaser, at such sale, a good and sufficient deed of conveyance for the premises sold. After the maturity of the note, Mr. Benson having made default in its payment, the trustee advertised and sold and conveyed the premises to Mrs. Caywood, the then holder of the note. The deed of trust and the note were offered and read in evidence without objection. To the admission of the trustee's deed from Mr. to Mrs. Caywood, counsel for defendant in the lower court objected, on the sole ground that it was a deed executed by a husband to his wife. This objection was overruled, the deed admitted in evidence and an exception taken. The admission of the deed in evidence is assigned for error.

This brings us to the consideration of the question of the relation of husband and wife under the laws of this State, with respect to the independent acquisition, enjoyment and disposition of property. The general tendency of legislation in this country has been to make husband and wife equal in all respects in the eye of the law, to secure to each, untrammeled by the other, the full and free enjoyment of his or her proprietary rights, and to confer upon each the absolute dominion over the property owned by them respectively. The legislation of our own State upon this subject, although yet somewhat crude and imperfect, has doubtless been animated by a growing sense of the unjustly subordinate position assigned to married women by the common law, whose asperities are gradually softening and yielding to the demands of this enlightened and progressive age.

The benignant principles of the civil law are being slowly but surely grafted into our system of jurisprudence. "In the civil law," says Sir WILLIAM BLACKSTONE (1 Blackstone's Com. [Cooley] 444,) "husband and wife are considered as two distinct persons, and may have separate estates, contracts, debts and injuries, and, therefore, in our ecclesiastical courts, a woman may sue and be sued without her husband."

The courts, which have ever been conservative, and which have always been inclined to check, with an unsparing hand, any attempted departure from the principles of the body of our law, which were borrowed from England, in the States which were the first to pass enactments for the enlargement of the rights of married women, regarding such enactments as a violent innovation upon the common law, construed them in a spirit so narrow and illiberal as to almost entirely defeat the intention of the law-makers ; but generally with a promptness that left little room for doubt, a succeeding legislature would reassert, in a more unequivocal form, the same principles which the courts had before almost expounded out of existence. To understand the marked changes which our own legislation has wrought in this respect, it is necessary that we should consider some of the disabling incidents and burdens attendant upon coverture at common law. At common law the husband and wife are one person, and as to every contract, there must be two parties, it followed that they could enter into no contract with each other. "The very being or legal existtence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband, under whose wing, protection and cover, she performs every thing." "Upon the principle of an union of person in husband and wife depend almost all the legal rights, duties and disabilities that either of them acquire by marriage." 1 Cooley's Blackstone, 442.

All the personal estate, as money, goods, cattle, household furniture, etc., that were the property and in posses-

sion of the wife at the time of the marriage, are actually vested in the husband, so that of these he might make any disposition in his life-time, without her consent, or might by will devise them, and they would, without any such disposition, go to the executors or administrators of the husband and not to the wife, though she survive him. Debts due to the wife are so far vested in the husband that he may, by suit, reduce them to possession. (2 Bacon's Abridgment, 21.) The rents and profits of her land during coverture belonged to the husband.

The law wrested from the wife both her personal estate and the profits of her realty, however much it might be against her will, and made them liable for his debts.

An improvident husband had it in his power to impoverish the wife by dissipating her personal estate, and the profits of her realty over which she, under the law, by reason of the coverture, had no control.

The wife in Colorado is the wife under our statutes, and not the wife at common law, and by our statutes must her rights be determined, the common law affecting her rights, as we shall presently see, having been swept away.

By our laws it was declared that the property, real and personal, which any woman may own at the time of her marriage, and the rents, issues, profits and proceeds thereof, and any real, personal or mixed property that shall come to her by descent, devise or bequest, or be the gift of any person except her husband, shall remain her sole and separate property, notwithstanding her marriage, and not be subject to the disposal of her husband or liable for his debts. R. S. 1868, p. 454.

The legislature, however, being reluctant to allow a married woman the absolute dominion over her own real property, further provided that she could only convey her estate in lands by uniting with her Husband in any conveyance thereof, and acknowledging the same separate and apart from her husband. R. S. 1868, p. 111, § 17.

It was not to be expected that our laws would long be per-

mitted to remain in this anomalous and incongruous condition, declaring in one section that the wife's real property should remain her separate estate, not subject to disposal by her husband, and in another that she could not convey it without the consent of her husband, which is necessarily implied by his uniting in a deed with her.

By "an act concerning married women," approved February 12, 1874, it is provided in section 1, that any woman, while married, may bargain, sell and convey *real* and personal property, and enter into any contract in reference to the same, as if she were sole. Section 2 provides that she may sue and be sued, in all matters the same as if she was sole. Section 3 provides that she may contract debts in her own name, and upon her own credit, and may execute promissory notes, bonds and bills of exchange, and other instruments in writing, and *may enter into any contract* the same as if she were sole. Section 4 repeals section 17 of chapter 17 of the Revised Statutes, which required the husband to unite with the wife in conveying her separate estate. This is, essentially; an enabling statute, and as such must be liberally construed to effectuate the purpose of its enactment. It confers, in terms, enlarged rights and powers upon married women. In contemplation of this statute, whatever may be the actual fact, a *femme covert* is no longer *sub potestate viri* in respect to the acquisition, enjoyment and disposition of real and personal property. This statute asserts her individuality, and emancipates her, in the respects within its purview, from the condition of thraldom in which she was placed by the common law. The legal theoretical unity of husband and wife is severed so far as is necessary to carry out the declared will of the law-making power. With her own property she, as any other individual who is *sui juris*, can do what she will, without reference to any restraints or disabilities of coverture. Whatever incidents, privileges and profits attach to the dominion of property, when exercised by others, attach to it in her hands. Before this statute

her right to convey was not untrammeled, but now it is absolute without any qualification or limitation as to who shall be the grantee. Husband and wife are made strangers to each other's estates. There are no words in the act that prohibit her from making a conveyance directly to her husband, and it is not within the province of the court to supply them.

When a right is conferred on an individual, the court cannot, without transcending its legitimate functions, hamper its exercise by imposing limitations and restrictions not found in the act conferring it. Were we to construe this enabling statute so as to deprive the wife of the right to elect to whom she will convey her property, we would it is believed thwart the legislative will whose wisdom we, as a court, are not permitted to question. The disability of husband and wife to contract with and convey to each other was, at common law, correlated and founded mainly upon the same principle, viz. : the unity of *baron* and *femme.* The removal in respect to the wife, of a disability that is mutual and springing from the same source, removes it also as to the husband.

The reason, which is the spirit and soul of the law, cannot apply to the husband as it no longer applies to the wife. If she may convey to the husband, the husband may convey to the wife. *Allen* v. *Hooper,* 50 Me. 371 ; *Stone* v. *Gazzam,* 46 Ala. 269 ; *Burdeno* v. *Ampeise,* 14 Mich. 91 ; *Patten* v. *Patten,* 75 Ill. 443.

Perhaps the right of the husband when acting in a representative capacity *in autre droit* to make a deed to his wife might be supported at common law. Co. Litt. 112 *a,* 187 *b ;* Com. Digest, *Baron and Femme,* D. 1. This doctrine, however, is repudiated in New York (*Leitch* v. *Wells,* 48 Barb. 654), but sanctioned in Pennsylvania. *Dundas' Appeal,* 64 Pa. 332.

We, however, rest our decision, not upon this mooted doctrine, but broadly upon the statute, under which a husband, when acting not in a representative capacity, but in

his own right, has, as we have seen, the right to convey directly to the wife.

But it may be urged that if not by reason of the disability of coverture, then by reason of the peculiarly intimate relation of husband and wife, and the consequent opportunity to commit and conceal fraud, the same principle that prohibits a trustee from executing a trust in favor of himself, also prohibits him from executing it in favor of his wife. This position is not without force. *Dundas' Appeal*, 64 Pa. 332. It must, however, be borne in mind, that it is only in the absence of an express or a clearly implied agreement that the law, suspicious of fraud and collusion where a fiduciary relation exists, will not permit a trustee to become either directly or indirectly a purchaser at his own sale ; but where the right to purchase is conferred in clear terms by the instrument appointing him, or where, as in the case before us, the wife as the holder of the note is in unmistakable language authorized to buy at the trustees' sale, the law interposes no impediment to the validity of a sale so made. Perry on Trust, 602, *v; Dundas' Appeal*, case cited *supra*, is precisely in point.

The evidence of Eugene Wilder, one of the proprietors and publishers of the Boulder County News (which was received without objection) sufficiently proves the due publication of the trustees' notice of sale, if the proof of that fact was necessary to entitle the plaintiff to offer his deed in evidence.

In our view, in order to entitle a purchaser at a trustees' sale to maintain ejectment, it does not devolve upon him to show that his grantor (the trustee) had complied with the conditions prescribed in the deed of trust. *Reese* v. *Allen*, 5 Gilm. 241 ; *Graham* v. *Anderson*, 42 Ill. 515 ; *Taylor* v. *King*, 6 Munf. (Va.) 358 ; *Harris* v. *Harris*, id. 367.

In *Dawson* v. *Hayden*, 67 Ill. 52, it was held, if a trustee under a power in a deed of trust makes a conveyance of the premises without complying with the provision in the deed of trust requiring publication of sale for a specified period, the legal estate will nevertheless pass to the pur-

chaser, and the deed to him cannot be impeached on that ground by a defendant in ejectment. It is a proper subject of inquiry in a court of equity. A legal, though a defeasible, title was by the trust deed vested in Mr. Caywood. Perry on Trusts, § 602, and cases cited.

By the deed executed by Mr. Caywood to his wife, although inartificially drawn, the legal title passed to the purchaser and became absolute in a court of law. That it should so pass was the evident intent of the grantor therein.

The deed purports on its face to have been made for the sole purpose of executing the trust. To give it any other construction would be to defeat the manifest purpose of its execution.

As when the plaintiff rested she had shown by her deeds that the legal title to the premises in dispute was in her, the motion for a nonsuit was properly denied.

The defendant offered in evidence the deposition of A. W. Benson, which the court excluded. The exclusion of the deposition is assigned for error. The deposition tended to show that the note and trust deed offered in evidence were executed in pursuance of an agreement between Benson and Wm. W. Caywood, by which Benson was to enter under the pre-emption laws of the United States a certain tract of land, and convey the same to Mr. Caywood. Had Benson, in pursuance of the agreement, entered and conveyed the land to Caywood, he would have been guilty of great moral turpitude, involving the crime of perjury. The consideration was, therefore, illegal. *Hoyt* v. *Macon*, 2 Col. 502.

Can a defendant in ejectment show that the consideration for a deed, under which the plaintiff claims title, was either wanting, or was illegal or fraudulent? That a conspiracy existed to defraud the United States out of the title to one hundred and sixty acres of land the deposition tends to show. Nothing appears to relieve the consideration from the taint of illegality and fraud. The question here presented was very fully considered, in the case of *The In-*

*habitants of Worcester* v. *William Eaton*, 11 Mass. 368, in a writ of entry in which the plaintiff sought to avoid the deed under which defendant claimed title by showing that it was executed for an illegal consideration. The consideration was an agreement to compound a felony.

The court says: "A bond or other obligation, or a written promise founded upon such a consideration, may be avoided, because the law will not uphold a contract, or permit a party to enforce it, if it was made to secure the price of an unlawful act. * * * If one holds the obligation or promise of the other, to pay him money, or do any other valuable act, on account of such illegal transaction, the party defendant may expose the nature of the transaction to the court, and the law will say : ' our forms and rules are established to protect the innocent, and to vindicate the injured, not to aid offenders in the execution of their unjust projects ' ; and if the party, who has foolishly paid his money, repents his folly, and brings his action to recover it back, the same law will say to him: ' you have paid the price of your wickedness, and you must not have the aid of the law to rid you of an inconvenience, which is a suitable punishment of your offense.' * * * A deed of bargain and sale, signed, sealed and delivered, acknowledged and recorded, is an *actual* transfer of the land to the grantee as much as the delivery over of a sum of money or a personal chattel." The court held that the title having passed, the deed could not be avoided by showing the illegal consideration. It is not doubted that if the defense had gone not to the consideration but to the *execution* of the deed, it would have been admissible. Thus it might be shown that the deed was executed under duress, or that it had been mis-read to the grantor, or other evidence might be given tending to prove that he did not assent to it. But want of, or fraud in, or illegality of the consideration in a plaintiff's deed, may not be shown by a defendant in ejectment. The defendant's remedy, if any he has, is not in a court of law. *Doe dem. Roberts* v. *Roberts*, 2 Barr. & Ald.

367; *Taylor* v. *King*, 6 Munf. (Va.) 365; *Dyer* v. *Day*, 61 Ill. 336; *Hovey* v. *Hobson*, 51 Me. 67.

The deposition of Benson was properly excluded.

Defendant then offered to introduce in evidence a warranty deed, dated June 3, 1875, from Albert W. Benson, and Helen Benson, his wife, purporting to convey the premises in dispute to him, and containing a waiver of homestead exemption in the body of the deed. By the stipulation filed in the cause it appears that Benson, on the 4th day of February, 1875, a year and a half after the execution of the trust deed to Caywood, caused the word "homestead" to be entered of record, on the margin of his recorded title. The law requires such entry to be made, to entitle a householder to a homestead. R. S. 385. It is the record entry that proclaims to the world that the owner of the property claims it as a homestead. Until the entry is made it is not in contemplation of law a homestead, and, therefore, it cannot be said that, as the wife of Benson did not join with him in the execution of the trust deed, as is required by the Homestead Act (R. S. 386), in case of mortgages executed after the property is claimed as a homestead, that the trust deed was executed against the provisions of law. Having reference to the condition of the property at the time the trust deed was made, Benson alone was a necessary grantor, even if a trust deed is to be considered as a mortgage, within the meaning of that word as used in the Homestead Act. *Drake* v. *Root*, 2 Col. 689.

The subterfuge adopted by making the entry of "Homestead" on the record on the very day that Benson and family vacated the premises, cannot be held to invalidate the trust deed. The deed from Benson and wife to the defendant in ejectment was subject to the incumbrance contained in the deed of trust, and must yield to any title *legally* deduced under it. *Taylor* v. *King*, cited *supra*.

Wells having purchased with the record notice of the trust deed occupies no better position than his grantor. The source of the title both in appellant and appellee is the

same. The court did not err in excluding the deed from Benson and wife to Wells. As we discover no error in the record, the judgment of the court below must be affirmed.

*Affirmed.*