No. 15,216.

ESTATE OF KEFOVER.
VETTING, AS ADMINISTRATOR *v.* KEFOVER.
(145 P. [2d] 879)

Decided January 31, 1944.

Mr. HOWARD ROEPNACK, for plaintiff in error.

Mr. ALBERT T. FRANTZ, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case originated in the county court of Jefferson county when John M. Kefover filed claim against the estate of his deceased wife, Carrie Kefover, in the amount of $369.13. Of the nine separate items listed, three, totaling $20.50, grouped under the head of "costs

of administration," were allowed by the County Judge as claims of the second class; the remaining six items— three consisting of funeral expenses totaling $265.36, and three consisting of hospital and medical bills in connection with the last illness totaling $83.27 — were allowed as claims of the third class. The administrator c.t.a. approved the second class claims, but resisted the allowance of the claims of the third class. After the allowance of the latter by the County Judge, appeal was taken to the district court. There, after a trial to the court, the latter affirmed the action taken by the county court. From the district court the case now comes here on writ of error, and we have elected to dispose of it on the supersedeas application. The county court apparently allowed recovery under 1935 C.S.A., chapter 176, section 195, which lists the priorities of claims against an estate and provides inter alia that claims of the third class shall include: "All funeral expenses, physicians' bills, bills and accounts contracted for the necessaries of life for the use of the testator or intestate and his or her family, during his or her last illness, for a period not exceeding thirty days immediately preceding the death of such testator or intestate, and other expenses of such illness, shall comprise the third class."

In the district court the sole testimony was that of the claimant husband. He stated that his wife owned some property in Illinois, acquired as a result of a previous marriage; that he had paid the hospital and doctors' bills incurred during his wife's last illness, as well as the funeral bills. He made the payments when he was administrator of his wife's estate. Later a will, which his wife had executed, appeared from Illinois. It was duly admitted to probate in the Jefferson County Court. It named some one other than the husband as executor.

The husband testified that the will left him $5 and that the remaining property was devised and bequeathed to his wife's sister. To this testimony counsel for the administrator c.t.a. objected on the ground that the will

was the best evidence. Counsel for claimant agreed to that suggestion, and they both joined in arguing that the will should be offered in evidence. Notwithstanding counsels' agreement on this point, the trial court refused to admit the will on the ground that it was immaterial, that the claim had been allowed as an indebtedness against the estate, and whether there was a will or not made no difference. His decision affirmed the county court's allowance of the claim as a matter of equity and justice under the law. Counsel for the administrator c.t.a. desired the will admitted in order that it could affirmatively appear that it did not make provision for the payment of funeral expenses from the estate; counsel for claimant wished to have the will admitted in·order that it could affirmatively appear that his client took nothing under the will except the sum of $5.·

Claimant husband also testified that their home property in Arvada was held in joint tenancy with his wife. There is no evidence on record as to the value of the estate, although the opening statement of counsel for claimant indicated that it consisted solely of personalty which was sold by the administrator c.t.a. to net $232. His counsel attempted to introduce evidence as to the financial status of the husband, but the court sustained opposing counsel's objection to that testimony.

Counsel for both the administrator c.t.a. and surviving husband agree that the case resolves itself into a question of law—that the only issue is "whether or not a husband paying a medical bill and paying a funeral bill of his deceased wife is entitled to recover that from the estate of his wife." It is the first time the question has been presented to this court.

There is a sharp conflict in the authorities as to the primary liability for the expenses of the last illness and funeral of a married woman. Counsel for both the administrator c.t.a. and the surviving husband refer to the annotations in 31 A.L.R., beginning at page 1499, on the

subject relating to the liability for the funeral expenses of a married woman, where there appears the following statement:

"It is to be noted that no question has been made but that the common law fixes the liability on the husband. The matter is one not often covered specifically by the various acts giving separate property rights to married women, and the question as now commonly presented is whether an intent to shift the liability to the separate estate of the deceased wife is to be implied from those statutes. While the general rule that the husband is liable is maintained in the greater number of jurisdictions, the weight of more modern authority seems to favor what is in this annotation termed the 'minority rule,' that acts giving separate property rights to married women, construed in connection with a statute imposing generally on the estates of decedents the burden of paying funeral expenses, shift the primary burden to the estate.

"Even in jurisdictions maintaining a contrary view, the effect of modern legislation has been recognized to the extent of admitting a secondary liability in the estate of a deceased wife for her funeral expenses." A more recent annotation in 108 A.L.R. 1226 shows the continuing cleavage on this question.

Some of the cases in our own jurisdiction which affect the status of married women follow.

In *Wells v. Caywood*, 3 Colo. 487, it is held that the husband may convey property directly to his wife. In the course of his opinion in that case, Mr. Chief Justice Thatcher said: "This brings us to the consideration of the question of the relation of husband and wife under the laws of this State, with respect to the independent acquisition, enjoyment and disposition of property. The general tendency of legislation in this country has been to make husband and wife equal in all respects in the eye of the law, to secure to each, untrammeled by the other, the full and free enjoyment of his or her pro-

prietary rights, and to confer upon each the absolute dominion over the property owned by them respectively. The legislation of our own state upon this subject, although yet somewhat crude and imperfect, has doubtless been animated by a growing sense of the unjustly subordinate position assigned to married women by the common law, whose asperities are gradually softening and yielding to the demands of this enlightened and progressive age. The benignant principles of the civil law are being slowly but surely grafted into our system of jurisprudence. 'In the civil law,' says Sir William Blackstone (1 Blackstone's Com. [Cooley] 444,) 'husband and wife are considered as two distinct persons, and may have separate estates, contracts, debts and injuries, and, therefore, in our ecclesiastical courts, a woman may sue and be sued without her husband."

Under the holding in *Schuler v. Henry*, 42 Colo. 367, 94 Pac. 360, a wife may be sued separately in tort. The husband is relieved of responsibility for those torts of his wife which he neither authorized nor in which he participated. In the course of his opinion in that case Mr. Chief Justice Steele used the following language:

"By our statute there is a complete change in all this; and the Colorado wife is not the wife as at common law, but is vested with absolute control and dominion over her property and her person. She may sue and be sued as though she were sole; she may engage in business on her own account; she may sell and convey her property without the consent of her husband; her property is not liable for her husband's debts; she is entitled to the earnings of her labor; she may execute any bond, bill or promissory note, and may contract debts in her own name; and in every suit or proceeding, when judgment is rendered against her, it may be enforced by execution against her. She may dispose of her property by will, and the law places both husband and wife upon the same level with reference to the disposition of property by will; the provisions of the statute are slightly

different, but the effect is the same, and neither can dispose of more than one-half of the property without the consent of the other. Either husband or wife may incur indebtedness for the family expenses, and for such indebtedness either or both will be liable. The husband is not liable for the debts of his wife contracted before marriage, except to the extent that he may have received property from her. The right of the husband to beat his wife or to imprison her to enforce obedience to his will is no longer recognized as a right by our race, and such treatment of the wife is practiced only by those of brutish instincts. The husband is no longer entitled to the exclusive possession of the children. Although there exist certain reciprocal obligations and duties growing out of the marital relation, whatever they are, they are not based upon the supposed vassalage of the wife or the imagined lordliness of the husband. Thus it will be seen that the wife in Colorado has been wholly emancipated 'from the condition of thraldom in which she was placed at common law.'

* * *

"That many of the states still hold the husband liable jointly with the wife for torts committed by her without his presence, must be conceded, and perhaps the greater number that have passed upon the question have so held; but in no one of the states so holding is the wife so completely emancipated from the dominion of her husband as in this state, and, as a rule, the courts find in their statutes some enactment showing that the legislature intended to not repeal the common law upon the subject.

* * *

"We can find no just reason for holding the husband liable for the torts committed by his wife unless committed by his direction. He cannot be held upon the common-law theory of unity of husband and wife. The unity has been severed, and we have grafted into our system of jurisprudence the benign principle of the civil

law, whereunder 'husband and wife are considered as two distinct persons, and may have separate estates, contracts, debts and injuries.' *Wells v. Caywood,* 3 Colo. 487. He cannot be held upon the ground that she cannot be held without him, for she can be sued in all matters as if she were sole. He cannot be held upon the ground that he has control of her property and should respond in damages with it, because he has no control of her property, and she may do with it as she pleases. He cannot be held upon the theory that he has the power to restrain her, because he has no such legal power. As he has no legal control over her person or her property, he should not be held for her wrongs. In fact, not one of the reasons assigned by courts and text writers for holding the husband liable exists in this state; and, as the reason for holding the husband no longer prevails, he should not be required to respond in damages for torts of his wife."

Under the rule announced in *Rains v. Rains,* 97 Colo. 19, 46 P. (2d) 740, a wife may "sue her husband for a tort committed by him on her person." In that case Mr. Chief Justice Butler, after quoting from the two foregoing cases, said: "As the nonliability of the husband to the wife for damages for a personal tort was founded upon the common-law fiction that husband and wife were one (13 R.C.L., pp. 1394, 1396), it would seem to follow that where that fiction is abolished, the nonliability does not survive. When the foundation is removed, the superstructure falls. 'Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself.' Broom's Legal Maxims (7th Ed.), 159. In *Wells v. Caywood, supra,* we said: 'The wife in Colorado is the wife under our statutes, and not the wife at common law, and by our statutes must her rights be determined.' "

Counsel for the administrator c.t.a. argues that none of these cases bear upon the liability for funeral expenses of a wife who has predeceased her husband. On

the contrary, we believe that they are persuasive in deciding this case. The principle running through all of them is to obliterate the distinctions affecting married women under the common law and to give them the same status as any other individual—whether that individual be a man, a single woman or a widow. Applying the reasoning and language of Mr. Chief Justice Butler to the facts in the present case, we must inevitably say that, as the nonliability of the wife's estate for funeral expenses was founded upon the common-law fiction that husband and wife were one, it would seem to follow that where that fiction is abolished the nonliability does not survive.

The statute, in fixing priorities of claims, makes no distinction between estates of married women and those of other persons. We believe the spirit of our laws and of our earlier decisions leads to the conclusion that no such distinction should be made here.

There has been much discussion in the opinions in some jurisdictions of the wisdom of enforcing this duty of burial on a surviving husband. Some advance the argument of necessity, some that of decency, and some because the surviving husband has the right to select the burial place. In some opinions there is an inference that the common-law rule in earlier days had been well nigh universal in its application. Because of this and because two former chief justices have referred to the fact that Colorado had adopted the more benign principles of the civil law in its application to married women, it is interesting to note who was liable for the funeral expenses of a married woman under the civil law.

Funerals in ancient times seem to have played a more important part in the life of the people than they now do. In the Laws of the Twelve Tables which Cicero was wont to extol, the tenth table related mostly to funerals and the regulation of expense in their celebration — a provision apparently taken from Solon of Athens. In the Pendects of Justinian are numerous references to

this subject, of which the following may be pertinent:

"Where any property comes to anyone by way of dowry, the Praetor grants a funeral action against him; for it was held by the ancient authorities to be perfectly just that the funeral expenses of women should be paid out of their dowries, just as out of their private property, and that the man who profits by the dowry on the death of a woman should contribute to her funeral expenses, whether he is the father or the husband of the woman aforesaid." *Ulpianus, On the Edict, Book XXV.*

"For the expenses of a funeral are a debt of the dowry:" *Julianus, Digest, Book X.*

"And therefore the dowry is liable for this debt." *Ulpianus, On Sabinus, Book XV.*

"* * * (2) Where a woman who is her own mistress dies, and her estate is not solvent, her funeral expenses must be paid out of her dowry alone; and this was stated by Celsus." *The Same, On the Edict, Book XXV.*

"Celsus says that where a woman dies, her funeral expenses should be paid out of the dowry remaining in the hands of her husband, and out of the remainder of her property in proportion." *Ulpianus, On the Edict, Book XXV.*

"For instance where the dowry is worth a hundred aurei, and her estate two hundred, the heir must contribute two-thirds, and the husband one-third of the funeral expenses:" *Paulus, On the Edict, Book XXVII.*

"Where there is no dowry, then Atilicinus says that the father must pay the entire expense; or else the heir of the woman, if she was emancipated, should do so. If, however, there are no heirs, and the father should not be solvent, suit can be brought against the husband to the extent of his property, in order that it may not appear due to his bad behavior that his wife was left unburied." *Pomponius, On Sabinus, Book XV.*

" * * * (1) But where an emancipated married woman dies during coverture, her heirs, or the possessors of the

property of her estate will be compelled to contribute, as well as her father in proportion to the amount of the dowry which he has received, and her husband in proportion to the amount of the dowry by which he has profited." *Pomponius, On Sabinus, Book XV.*

"Funeral expenses are always charged to the estate, and it is customary for them to take precedence of all other debts, when the estate is solvent." *Marcianus, Trusts, Book VIII.**

It should be noted that the dowry referred to in the Justinian Code is not the dower right which the wife had at common law. The dowry under the civil law was what a wife brought to a marriage by way of contribution to its expenses, and this dowry could have been contributed by her father, herself, or some other member of her family, or by a combination of members of her family; whereas dower at common law was a right which a wife acquired in the property of her husband, essentially for her protection after his death. 17 Am. Jur. 655. When, therefore, the various provisions of the Justinian Code above referred to speak of prorating the funeral expenses between the wife's estate and the dowry, or charging them against the dowry, it can be seen that whether the charge was against the wife's separate estate or the dowry, or both, it was a charge against an interest belonging to the wife or one which she had contributed and was not a charge against a fund which the husband had provided.

The Code Napoleon made funeral expenses a charge, ahead of all other charges except court expenses, against the estate of every deceased person, apparently without exception. The Fench Civil Code, Henry Cachard, section 2101, page 468. The one civil law state in this Union makes funeral expenses a prior charge to everything else, and apparently there is no exception as to persons. Louisiana Civil Code, Dart Annotated, 1932, Articles

*The Civil Law—a Translation by S. P. Scott. Vols. 3-4, pp. 94 to 99.

3191, 3192, 3252 and 3257. A similar provision seems to exist in the civil code of Spain and many of the Spanish speaking countries of this continent (Colombia, Chile, Mexico, Uruguay and Guatemala—Civil Law in Spain and Spanish America, p. 294, by Clifford Stevens Walton.) It is apparent that under the civil law the non-liability of the wife's estate never did exist and does not in modern times, and that the rule holding a married woman's estate liable for her funeral expenses has the most ancient as well as the most modern authority.

Counsel for the administrator c.t.a. urges that, inasmuch as our probate law is in the main modeled after the Illinois law, we should follow the case of *Gustin v. Bryden,* 205 Ill. App. 204, where it was expressly held that the married women's act and the statute classifying claims for funeral expenses as preferred claims against an estate did not relieve the husband of his common-law primary liability to pay the wife's funeral expenses. We do not follow that case; not only for the reasons heretofore given, but also because we believe that even by statute alone, without considering our earlier decisions, there has been a more complete break from the common law in this state than in Illinois. That state still retains a form of dower, whereas we have a provision in our statute which reads as follows: "Dower and the tenacy by courtesy are abolished, and neither husband nor wife shall have any share in the estate of the other save as herein provided. '35 C.S.A., c. 176, §1." Dower and courtesy are both rights existing at common law that become fully operative upon the death of the husband and wife respectively for the benefit of the surviving spouse. Their abolition would imply that the legislature intended that no vestigial claims or interests of the common law should remain after the marriage had been dissolved by death—that the estate of each should be administered in the same manner, subject only to statutory exceptions such as the claim for widow's allowance.

So far we have considered simply the matter of the funeral expenses. The expenses of last illness differ from funeral expenses in that they are incurred during the lifetime of the married woman rather than after death. Under our statute they have become, prior to her death, both the obligation of herself and of her husband. Because of this distinction the Wisconsin court has held in one case, *Schneider v. Estate of Breier*, 129 Wis. 446, 109 N.W. 99, that funeral expenses of a married woman become a charge against her property constituting her separate estate after her death, whereas *In re Phalen's Estate*, 197 Wis. 336, 222 N.W. 218, it is held that the expenses of the last sickness are chargeable to the husband. There also seems to be a variance of treatment of those two items in *In re Wilson's Estate*, 160 Okla. 23, 15 P. (2d) 825. Counsel for the administrator c.t.a. comments on this result in Wisconsin as follows: "If the original decision is correct, that the statute established the liability of the wife's estate for funeral expenses, statutory construction would require that it be carried forward as to the expenses of last illness, because the language of the statute does not make any difference between the two."

We agree with counsel's conclusion and believe that the same result should follow in respect to the liability for expenses of last illness as in the case of the funeral expenses of a married woman. *Smith v. Eichner*, 124 Wash. 575, 215 Pac. 27. We note that under the Louisiana Civil Code expenses of last illness are given a third preference rating, whereas funeral expenses come first. Under the Civil Code of Mexico "expenses of the funeral and costs which shall have been caused by the last sickness of the author of the inheritance are called funeral debts." (Laws of Mexico, supra). Under an amendment in 1892, expenses of last illness under the Code Napoleon, supra, follow funeral expenses as a third class claim. In the foregoing jurisdictions the expenses of last illness seem to be claims against a married woman's estate.

As noted earlier, funeral expenses and expenses of last illness both appear as third class claims under our statute. We believe both items constitute valid claims and that the estate is primarily liable for both.

This rule makes for greater certainty in that (a) it is uniform for all estates, including those of married women; (b) the assets of an estate are a matter of public record—the solvency of a surviving husband may be difficult to prove, when the husband contends otherwise.

We further believe this result conforms to the general practice in this state.

The judgment is accordingly affirmed.

MR. JUSTICE GOUDY not participating.