**ESTATE OF Edward P. STACK,
Deceased, Appellant,**

v.

**Wanda Stack VENZKE, Appellee.**

**No. 3–1084A269.**

Court of Appeals of Indiana,
Third District.

Aug. 26, 1985.
Rehearing Denied Oct. 22, 1985.

John M. Sedia, Tweedle & Sedia, Highland, for appellant.

Martell B. Royer, Hammond, for appellee.

STATON, Presiding Judge.

At the time of his death, Edward Patrick Stack, Sr. (Stack) was married to Wanda M. Stack (Wanda) who survived him.[1] Stack and Wanda had no children born to them. Stack's only children: Richard, Edward, Thomas, and Gerald (Sons), were born to him from a previous marriage, and they also survived their father. The parties to this action are Wanda, whose last name is now Venzke, and the Sons.

The case before us for review is a consolidation of two formerly separate matters pertaining to Stack's estate.[2] The issues we must resolve, restated and simplified, are as follows:

(1) Did the lower court err by finding that a valid post-nuptial agreement (Agreement) did not exist to preempt Wanda's status as an heir-at-law to Stack's estate?

(2) Did the lower court err in its order that Wanda could recover from her husband's estate the cost of funeral expenses that she paid?

Affirmed.

## I.

### Wanda's Status

Stack did not die intestate. His will, executed on January 29, 1979, and admitted for probate on July 31, 1979 contained numerous specific bequests, but it did not dispose of all of his property. It is the distribution of this remaining property which, in part, has led to this appeal.

Stack's will contained the following provision:

"III.

Having hereinabove provided and otherwise provided for my beloved wife and having entered into a Post-Nuptial Agreement with my wife, I make no further provision for her in this my Last Will and Testament." [3]

(R. 4). The existence or non-existence of the Agreement mentioned in the will was a primary issue of the proceedings below. And, as discussed herein, the validity and effect of the Agreement is central to the resolution of the issues raised before us.

The lower court granted a petition to Construe the Will filed by Richard Stack, Executor of his father's estate. That petition prayed, *inter alia*, that the court declare that the residue of Stack's estate pass pursuant to Indiana's laws of intestate succession,[4] and that the Sons be declared to be the sole heirs-at-law of the estate. To support their petition, the Sons provided the court with an unexecuted copy of the Agreement.[5] The Sons also offered to prove the existence of the Agreement by soliciting the testimony of the attorney who prepared it and witnessed its execution.

The court below ruled that indeed, the property not disposed by the will should pass by Indiana's laws of intestate succession. It also ruled that Wanda and the Sons were the sole surviving heirs-at-law. To support its ruling, numerous findings of fact were set down by the trial court, and among them were the following:

\*    \*    \*    \*    \*    \*

"5. On January 5, 1979, the decedent and his wife, Wanda M. Stack, executed a certain document entitled 'Post-Nuptial Agreement'.

6. The decedent received an executed copy of said Post-Nuptial Agreement, and Wanda M. Stack did not receive a copy.

---

1. Stack married Wanda on October 2, 1976. He died on May 30, 1979.

2. Cause No. 3–1084 A 269 and Cause No. 3–1084 A 270.

3. Provision III was not the only one to mention Wanda. Provision II of Stack's will bequeathed to Wanda "... all my personal property in the

form of furniture, furnishings, appliances and all fixtures wheresoever situated." (R. 4).

4. IC 1985, 29–1–2–1 (Burns Code Ed.).

5. A copy of this document was accepted into evidence as Estate's Exhibit No. 1 for the limited purpose of showing that it was in fact executed.

7. Decedent and his wife, Wanda M. Stack, executed their respective wills on January 5, 1979.

8. At some date prior to January 5, 1979, decedent and his wife became joint owners of a certain safety deposit box number 223 at the First Bank of Whiting, Whiting, Indiana.

9. The decedent was the only person to enter said safety deposit box before the contents of said box were inventoried by the Lake County Assessor after the death of the decedent.

10. Decedent's Last Will and Testament, dated January 5, 1979, was among the contents of said safety deposit box at the time of decedent's demise.

11. The 'Post-Nuptial Agreement' was not found among the contents of said safety deposit box.

12. No executed document; nor copy nor facsimile of the 'Post-Nuptial Agreement', has been presented to this Court which was found on or after May 30, 1979, and which purports to have been executed by the decedent and his wife on January 5, 1979, exhibiting the date of execution and signatures of the executing parties which can be construed as a waiver by Wanda M. Venzke of her intestate expenctancy [sic] from decedent's estate."

\*     \*     \*     \*     \*     \*

(R. 23–24).

■ On appeal, findings of fact will not be disturbed unless they are found to be "clearly erroneous," which means there are no facts or inferences that can be drawn to support the finding. *Kimbrell v. City of Lafayette* (1983), Ind.App., 454 N.E.2d 73, 74. Here it was stipulated that the Agreement was executed, but an executed copy or facsimile thereof could not be produced at trial. The conclusion based on that fact was that no validly executed post nuptial agreement was in existence at the time of Stack's death. It has been repeatedly held on appeal that the decision of a lower court will be affirmed if it is sustainable on any legal theory. *Marshall County Redi-Mix, Inc. v. Matthew* (1984), Ind., 458 N.E.2d

219, 221. Thus, a finding that the facts and inferences drawn therefrom are not clearly erroneous would be sufficient to affirm the lower court's decision. In arriving at that determination, we will address the Sons' argument that sufficient evidence was submitted to prove the existence of a validly executed Agreement, and that the Agreement was valid because it was executed with full disclosure and adequate consideration.

Recently the Indiana Supreme Court reiterated the law regarding antenuptial agreements. They wrote that: "... ante-nuptial contracts are favored by the law as 'promoting domestic happiness and adjusting property questions which would otherwise often be the source of fruitful litigation.'" *In re Marriage of Boren* (1985), Ind., 475 N.E.2d 690, 693 (citations omitted). In *Boren* the Court was discussing antenuptial agreements and divorce, but observed that:

"... [there is] no reason to conclude that antenuptial agreements pertaining to the rights and interests of the parties upon dissolution of marriage should be regarded differently than those providing for the rights and interests of the parties upon the death of one of the spouses, so long as the same tests for validity of such agreements are met."

*Id.*, at 694 (citations omitted).

The tests for validity recited by the Court in *Boren* require that the agreement not be unconscionable, and it be entered into in the absence of fraud, coercion or undue influence after it was discussed and stated to be understood. *Id.* The waiver of expectancy statute, IC 1985, 29–1–2–13 (Burn's Code Ed.), uses the following language to cite the validity factors, and it adds consideration to the *Boren* concerns:

"The intestate share or other expectancy which the spouse or any other heir may be entitled to may be waived at any time by a written contract, agreement or waiver signed by the party waiving such share or expectancy. The promise of marriage, in the absence of fraud, shall be a sufficient consideration in the case

of an agreement made before marriage. In all other cases such contract, agreement or waiver shall be binding upon the parties thereto if executed after a full disclosure of the nature and extent of such right, and if the thing or promise given to such party is a fair consideration under all the circumstances. Except as otherwise provided therein, such waiver executed by the decedent's spouse shall be deemed a waiver of the right to elect to take against the decedent's will and the written contract, agreement, or waiver may be filed in the same manner as is provided in this article for the filing of an election."

Once again we defer to the lower court who made the following findings of fact regarding the evidence before it:

"Decedent did not give, nor did Wanda M. Stack receive, on or before January 5, 1979, a full disclosure of the nature of the rights she purportedly waived on that date.

Decedent did not give, nor did Wanda M. Stack receive, on or before January 5, 1979, a full disclosure of the extent of her purported waiver on that date.

Decedent did not give, nor did Wanda M. Stack receive, on or before January 5, 1979, a fair consideration for the rights she purportedly waived on that date."

(R. 24).

■ After an examination of the entire record, we do not conclude that reversal is required under the "clearly erroneous" standard. The finding that Wanda did not receive full disclosure of the nature of her rights she waived is supported by her testimony. She testified that she met with an attorney twice, that no conversation regarding the Agreement took place on those occasions, and that she merely signed some documents. Conflicting testimony was given by the attorney who prepared the Agreement. He stated that he discussed the Agreement with Wanda and that she understood it. It is up to the trial court to resolve conflicting testimony, and this Court will not determine probative force to determine where the preponderance lies. The Court of Appeals does not reweigh evidence and it must accept findings if they are supported by evidence of probative value. We will not substitute our judgment for that of the lower court. Here we have considered whether the evidence favorable to the judgment was sufficient to support the findings, and we conclude that it was. *Keystone Square Shopping Center Co. v. Marsh Supermarkets, Inc.* (1984), Ind. App., 459 N.E.2d 420, 422 (*trans. denied*); *Courtesy Enterprises, Inc. v. Richards Laboratories* (1983), Ind.App., 457 N.E.2d 572, 575; *Town of Rome City v. King* (1983), Ind.App., 450 N.E.2d 72, 77.

Additional support for our decision lies in the fullness of disclosure finding made by the lower court. On its face, the Agreement merely contained a list of the real and personal property owned by Stack. No indication of its value can be found to accompany the list. We do not see how a knowing waiver of rights, as described in *Boren* and in our state statute, can occur if some indication of the worth of the property is not provided.[6] There was also evidence introduced on the record that Stack did not reveal the full extent of the property he owned.

The attorney who prepared the Agreement testified that Stack only disclosed to him stock ownership in eight (8) corporations, whereas a partial inventory of Stack's estate revealed that Stack owned stock in at least thirty-two (32) corporations. The undisclosed stocks owned before the Agreement was executed had a value of at least thirteen thousand dollars ($13,000.00).[7] Neither a listing of these

---

6. Wanda testified that she was aware that her husband owned property, but she had no knowledge of its worth.

7. Listed among the unreported stocks were six (6) corporations whose value was appraised to be worthless as of January 5, 1979.

The amount thirteen thousand dollars ($13,000.00) is based on the certificates of stock found in Respondent's Exhibits Nos. 3 and 4.

stocks or its value appears in the Agreement or was disclosed to Wanda.

Similarly, not all of Stack's real property was listed in the Agreement. Although most of the omitted parcels of land owned by Stack was unimproved and individually of little worth, its appraised value ranging from zero to five thousand dollars ($0.00 to $5,000.00), the aggregate appraised worth of his real property is over thirty-one thousand dollars ($31,000.00).

■ Given the abovementioned omissions of personal and real property, even if an executed copy of the Agreement could be produced, it would not be binding upon the parties because of the failure of Stack to fully disclose the extent and approximate value of the property he owned. Without this information at the time of execution, Wanda cannot be said to have made an effective waiver of her rights since the value of the expectancy the Agreement purported to waive was not revealed to her. Although there is no absolute and mandatory duty to fully disclose to Wanda the nature, extent, and value of all his possessions, *Johnston v. Johnston* (1962), 134 Ind.App. 351, 357, 184 N.E.2d 651, 654 *(rehearing denied )*, it is significant that over forty-four thousand dollars ($44,000.00), out of holdings estimated to be worth over one hundred and forty-nine thousand dollars ($149,000.00), was not disclosed at the time that the Agreement was executed.[8] Lacking here is the relationship of special trust and confidence that demands the utmost good faith from each spouse in executing an antenuptial agreement. *Russell v. Walz* (1984), Ind.App., 458 N.E.2d 1172, 1180 *(trans. denied).*

■ Once we had determined that the Agreement was not enforceable because of the lack of full disclosure of assets, the question of its existence at the time of Stack's demise became moot. Likewise, it was no longer necessary for us to inquire

into the adequacy of consideration to support the Agreement. *Shuee v. Gedert* (1979), 182 Ind.App. 432, 395 N.E.2d 804, 808. Thus, there is no need to disturb the lower court's finding that Wanda was an heir-at-law to the remaining portion of Stack's estate.

## II.

### Funeral Expenses

By agreement of the parties, a Master was employed to investigate Wanda's claim against Stack's estate for the cost of the funeral expenses that she paid. The Master found that Wanda's claim for three thousand one hundred and ninety-seven dollars ($3,197.00) was substantiated by evidence, and it was recommended by the Master that Wanda should be paid for this expense from Stack's estate. Judgment was entered in Wanda's favor.

The Sons argue that Wanda voluntarily paid for her husband's funeral, and because of the Agreement, she waived her interest in Stack's estate. The Sons claim that for those reasons, Wanda is not entitled to reimbursement from Stack's estate. In support of their position, the Sons refer us to *Owen Creek Presbyterian Church v. Taggart* (1909), 44 Ind.App. 393, 89 N.E. 406. In their brief, however, the Sons concede that payment of an estate debt by one who is interested in the estate subrogates the payor to the rights of the payee against the estate, once again citing *Owen Creek. Id.,* Ind.App. at 396, 89 N.E. at 408.

■ We agree that *Owen Creek* is correct, and we add that an heir who paid claims against an estate is not a "volunteer" who would be precluded from being reimbursed under the doctrine of subrogation. *Chamness v. Chamness' Estate* (1913), 53 Ind.App. 225, 228, 101 N.E. 323, 324. Given our resolution of the post nuptial agreement issue above, it is clear that

---

**8.** The amount forty-four thousand dollars ($44,-000.00) represents the value of Stack's real and personal property not disclosed. The larger figure was extracted from the lower court's finding that:

"(a) Decedent owned on January 5, 1979 real estate with a fair market value of in excess of $71,000.00 and personal property with a fair market value of in excess of $78,000.00." (R. 24).

Wanda was an heir having an interest in Stack's estate. Thus, Wanda's award for funeral expenses was not an error, and it will not be reversed.

Affirmed.

GARRARD and HOFFMAN, JJ., Concur.