**In the Matter of the ESTATE OF Stephen James BOYD, Deceased.**

**Ronald Boyd, Claimant–Appellee,**

v.

**Linda Boyd, as Personal Representative, and Linda Boyd, Individually, Personal Representative–Appellant.**

**No. 97CA2072.**

Colorado Court of Appeals, Div. III.

Dec. 24, 1998.

Rehearing Denied Jan. 21, 1999.

The decedent and the personal representative were separated and an action to dissolve their marriage had been filed at the time of the decedent's death. After the death, the decedent's brother began to make funeral arrangements. As part of this process, he called the personal representative and, according to the brother, she "told [him] to take care of it." Representatives of the funeral home also reported that they had called the personal representative, and she "gave [her] permission for [the Boyds] to make arrangements and take care of the funeral."

Although the decedent's brother made the funeral arrangements, including signing the contract with the funeral home, he testified that he believed the estate would pay for the expenses.

More than a year and a half after the funeral, father became aware that the bill for the funeral had not been paid. At that point, he paid the bill because it "had to be paid. It had gone on something like 18 months. And we're established in the community and so I felt . . . that I should pay it."

Applying the doctrine of equitable subrogation, the court found that, although father had no legal obligation to pay the bill, he did so to protect his family's reputation. Balancing the equities, the court allowed father's claim, but "suggested" that, since the personal representative might have spent less on the funeral than the decedent's family did, the family should "consider some contribution toward the funeral expenses."

Robert D. Hawthorne, P.C., Robert D. Hawthorne, Limon, for Claimant–Appellee.

George McLachlan, Lamar, for Personal Representative–Appellant.

Opinion by Judge DAVIDSON.

The estate of Stephen James Boyd, through its personal representative Linda Boyd (personal representative), and Linda Boyd, individually, appeal from the trial court's order allowing the claim of Ronald Boyd (father), the decedent's father, for reimbursement of funeral expenses against the estate. We affirm.

**I.**

Personal representative first contends that father's claim was not timely filed under § 15–12–803, C.R.S.1998, and that, accordingly, the court lacked jurisdiction over the claim. We disagree.

As relevant here, § 15–12–803(2), C.R.S.1998, states that:

All claims against a decedent's estate which arise at or after the death of the decedent

. . . are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented

... within four months after it arises.

Here, as of March 1994, an expense was incurred by the brother pursuant to the contract signed as part of the funeral arrangements. Father, however, did not become involved until he learned, a year and a half later, that the bill remained unpaid. In November 1996, he paid the funeral expenses. Thus, no claim against the estate by father arose until that time.

## II.

■ Personal representative also contends that the court erred in applying the doctrine of equitable subrogation to this case because father's payment of the funeral bill was made as a volunteer or meddler. Again, we do not agree.

Generally, the law assumes that the estate will pay for the decedent's funeral expenses. *See* § 15–12–805, C.R.S.1998 (funeral expenses enumerated as a priority claim in cases where the estate's assets are insufficient to pay all claims in full); § 15–10–201(8), C.R.S.1998 (funeral expenses enumerated as a claim against the estate); *Estate of Kefover*, 112 Colo. 53, 145 P.2d 879 (1944).

Equitable subrogation "is a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." *United Security Insurance Co. v. Sciarrota*, 885 P.2d 273, 277 (Colo.App.1994); 16 G. Couch, *Cyclopedia of Insurance Law* § 61:18 (R. Anderson 2d ed.1983); *see also Cole v. Hotz*, 758 P.2d 679 (Colo.App.1987).

A number of courts of other jurisdictions have applied the doctrine of equitable subrogation to hold a decedent's estate liable for reimbursement where someone other than the estate paid for funeral expenses. *See Estate of Johnson*, 240 Cal.App.2d 742, 50 Cal.Rptr. 147 (1966); *Estate of Stack v. Venzke*, 485 N.E.2d 907 (Ind.Dist.Ct.App. 1985); *In re Kneebs' Estate*, 246 Iowa 1053, 70 N.W.2d 539 (1955); *In re Estate of Bends*, 589 S.W.2d 330 (Mo.App.1979).

Some of these courts have recognized an exception to this rule where the person paying the bill is a volunteer or a meddler. *Estate of Stack v. Venzke, supra; In re Kneebs' Estate, supra; In re Estate of Bends, supra.*

For example, where, despite the fact that the next of kin had already made funeral arrangements, a third party "defiantly and with 'severe' criticism took control of the funeral," the court deemed him a meddler and held that he was not entitled to reimbursement from the estate. *Guilliume v. McCulloch*, 173 Wash. 694, 698, 24 P.2d 93, 94 (1933). Similarly, where a third party arranged for a funeral more elaborate than the public administrator had authorized, the third party was deemed a volunteer. *In re Cammarinese's Estate*, 199 Misc. 831, 104 N.Y.S.2d 7 (1951). *See also Coleby v. Coleby* 2 L.R.—Eq. 803 (Ch. 1866) (plaintiff who conceded that he paid funeral expenses out of his own money as a gift, but later changed his mind, not entitled to reimbursement from the estate).

The burden of proof on the issue of whether the person who paid was a volunteer or meddler, however, rests with the personal representative. *In re Kneebs' Estate, supra.*

Here, personal representative failed to present any evidence to support her theory that father was a volunteer or meddler as the terms are used in the context of the exception to the doctrine of equitable subrogation for funeral expenses. Indeed, uncontroverted evidence indicates that she instructed the funeral home to allow the Boyd family to make the funeral arrangements. Thus, the court properly found that these exceptions did not apply in this case.

## III.

■ Personal representative next contends that the trial court's findings of fact were not supported in the record. Specifically, she appears to challenge the court's finding that father's motive for paying the bill was his concern for his family's reputation. Since this finding was amply supported in the record, however, we disagree.

[4] Findings of fact in an equity case will not be disturbed on appeal if they are sup-

ported by the record. *Antonioli v. Arlian*, 96 Colo. 513, 45 P.2d 174 (1935).

Here, father's testimony that he felt that the bill had to be paid since it had been outstanding for over 18 months, and since his family was "established in the community," supported the challenged finding.

In support of her argument, personal representative points to evidence indicating that the decedent's brother and other members of the decedent's family took the decedent's property and held it for a period of time, and that there were acrimony and ill will between personal representative and the decedent's family. However, since the court's findings are supported in the record, we will not disturb them on appeal.

Judgment affirmed.

JONES and RULAND, JJ., concur.