**In re the MARRIAGE OF Ermal S.F. BOREN, Appellant-Respondent,**

and

**E. Raye Boren, Appellee-Petitioner.**

No. 385S116.

Supreme Court of Indiana.

March 26, 1985.

David B. Hughes, Hughes & Hughes, Indianapolis, James G. McDonald, Jr., Princeton, for appellant-respondent.

Glenn A. Grampp, James D. Lopp, Sr., James D. Lopp, Jr., Evansville, for appellee-petitioner.

## ON CIVIL PETITION TO TRANSFER

PRENTICE, Justice.

This cause is before us on the petition of Ermal Boren (Appellant/Respondent) to transfer the cause from the Court of Appeals, Fourth District, following its affirmance of the judgment of the trial court, which, in a dissolution of marriage proceeding, awarded E. Raye Boren (Appellee/Petitioner) $188,500 as well as attorney and appraisal fees, notwithstanding an antenuptial agreement which provided that she would limit her claim against her husband to $5,000 in the event the marriage was terminated by death or "legal proceedings." Inasmuch as the decision of the Court of Appeals, reported at 452 N.E.2d 452, erroneously decided a new question of law, as hereinafter set forth, the petition to transfer is now granted, and the decision and opinion of the Court of Appeals is vacated.

The record discloses that Ermal Boren (Husband), a resident of Gibson County, met E. Ray Boren (Wife), a resident of Florida, in February, 1969 and proposed marriage to her in August, 1969. At that time Husband was fifty-nine (59) years of age, and his wife of over thirty (30) years had recently died. He had one daughter. Wife was fifty-five (55) years of age, had been married on three prior occasions, and had one son from a previous marriage. At the time of the proposal, Wife was managing a motel in Daytona Beach, Florida and had been so employed for several years. Although Husband, at the time of his proposal, discussed his desire to execute an antenuptial agreement with Wife, the agreement was not executed until a date six (6) days prior to the marriage, one month later. Upon accepting Husband's proposal, Wife liquidated her assets, totalling approximately $40,000, resigned her employment, and moved to Husband's home. Wife had thought that she could convince Husband that an antenuptial agreement was unnecessary, but he was adamant and would not agree to get blood tests, apply for a marriage license, or set a wedding date until Wife signed the agreement. The trial court found that Wife traveled to Indiana with full knowledge that Husband was adamant concerning the requirement of an antenuptial agreement.

The agreement provides, in pertinent part, that the parties desire by the agreement to "prescribe, limit, and determine the interest and control which each ... may have in the estate of the other ... during the marriage, ... or should the same be determined by death or legal proceedings." The agreement further provides that each party retain sole ownership, control and enjoyment of and have the exclusive right to dispose of all his property then owned or which might thereafter be acquired. Husband agreed that he would make no claim to any part of Wife's estate. Wife agreed that her claim against Husband's estate would be limited to a cash settlement of $5,000. Paragraph 6 of the agreement provides:

"It is mutually agreed and understood by and between the two (2) parties hereto that the purpose and intent of this agreement is to fully, and completely define and limit the claims and demands which each of the parties to this contract shall have against the estate of the other. Should either party die during the pendency of this contract, or should the contract be determined by legal proceedings, the claim herein stipulated and defined shall be the limit which either party may have against the estate of the party so dying, or the contract being terminated as above specified during the continuance of the marriage contract."

The parties were married on September 24, 1969. During the marriage, Husband continued farming, and Wife performed the usual activities of a housewife, performed some tasks about the farm, and helped to

care for Husband's elderly stepmother for a period of time. On April 30, 1981, Wife filed her petition for dissolution of the marriage.

The trial judge found the estate of the parties to be worth $3,306,061.24 at the time of the dissolution. Wife had brought approximately $40,000 into the marriage. The remainder of the assets had been brought into the marriage by Husband, inherited during the marriage by Husband, or earned by him during the marriage. The trial judge determined that the agreement was invalid as to all of the assets acquired during the marriage, modified its terms, and awarded her $183,500 as her share of the assets acquired during the marriage in addition to $5,000 as provided by the agreement. The court further ordered Husband to pay $12,000 attorneys' fees and $4,500 for the cost of an appraisal of the marital property, incidental to the litigation.

■ At issue is the validity and enforceability of an antenuptial agreement upon the dissolution of marriage. Such agreements are legal contracts by which parties entering into a marriage relationship attempt to settle the interest of each in the property of the other during the course of the marriage and upon its termination by death or other means. *Russell v. Walz,* (1984) Ind. App., 458 N.E.2d 1172, 1179 (*transfer denied*). This Court has had several occasions to rule upon the validity of antenuptial agreements and has consistently held that such agreements, so long as they are entered into freely and without fraud, duress, or misrepresentation and are not, under the particular circumstances of the case, unconscionable, are valid and binding. *Mallow v. Eastes,* (1913) 179 Ind. 267, 274, 100 N.E. 836, 839; *Kennedy v. Kennedy,* (1898) 150 Ind. 636, 643, 50 N.E. 756, 758; *McNutt v. McNutt,* (1888) 116 Ind. 545, 551–552, 19 N.E. 115, 117. In *Mallow,* we stated:

> "Our courts have uniformly upheld antenuptial contracts where fairly entered into, even though the effect be to leave the surviving wife very little, based upon the motives of marriage not being mercenary, but of the highest consideration in itself, and holding under such contracts, that the considerations fixed by the parties will be deemed sufficient, even though the provisions for the contemplated wife be much less than the statutory right of widows, or even give her no property interest."

*Mallow v. Eastes,* 179 Ind. at 274–275, 100 N.E. at 839. And in *Buffington v. Buffington,* (1898) 151 Ind. 200, 202, 51 N.E. 328, 329, we held that antenuptial contracts are favored by the law as "promoting domestic happiness and adjusting property questions which would otherwise often be the source of fruitful litigation." Such contracts will be liberally construed to effect, so far as is possible, the parties' intentions. *Id.; see also Russell v. Walz,* (1984) Ind. App., 458 N.E.2d 1172, 1179; *Estate of Gillilan v. Estate of Gillilan,* (1980) Ind. App., 406 N.E.2d 981, 988; *McClain's Estate v. McClain,* (1962) 133 Ind.App. 645, 651, 183 N.E.2d 842, 846; *Baugher v. Barrett,* (1957) 128 Ind.App. 233, 238–239, 145 N.E.2d 297, 299–300 (*trans. denied*); *Rousch v. Hullinger,* (1949) 119 Ind.App. 342, 346, 86 N.E.2d 714, 715; *Moore v. Harrison,* (1901) 26 Ind.App. 408, 411, 59 N.E. 1077, 1078.

The above cited cases involve the application of antenuptial agreements upon the death of a spouse rather than upon the dissolution of the marriage; hence, the question is whether these general principles are equally applicable to agreements which provide for the property rights and financial obligations of the parties upon divorce.

■ In the past, in some cases, policy considerations have dictated that antenuptial agreements providing for property settlement upon divorce are not binding upon the court. *See Annot.,* 57 A.L.R.2d 942 and *Watson v. Watson,* (1906) 37 Ind.App. 548, 77 N.E. 355. However, policy considerations regarding marriage and antenuptial agreements which address themselves to property settlements in the event of divorce have changed significantly as the

institution of marriage and marriage laws have changed. Our court of appeals has discussed the evolution of such policy considerations in *Tomlinson v. Tomlinson*, (1976) 170 Ind.App. 331, 352 N.E.2d 785 (*transfer denied*) and has held that antenuptial agreements settling the property rights of the parties upon dissolution of marriage are not per se void as against public policy. *Id.* at 339, 352 N.E.2d at 791. With this determination, we and many other jurisdictions, *see, e.g., Newman v. Newman*, (1982) Colo., 653 P.2d 728, 731; *Posner v. Posner*, (1970) Fla., 233 So.2d 381, 385; *Scherer v. Scherer*, (1982) 249 Ga. 635, 292 S.E.2d 662, 666; *Volid v. Volid*, (1972) 6 Ill.App.3d 386, 286 N.E.2d 42; *Frey v. Frey*, (1984) 298 Md. 552, 471 A.2d 705, 710; *Marschall v. Marschall*, (1984) 195 N.J.Super. 16, 477 A.2d 833, 838; *Gross v. Gross*, (1984) 11 Ohio St.3d 99, 464 N.E.2d 500, 506; *Hudson v. Hudson*, (1960) Okl., 350 P.2d 596, 597, are in accord.

Two of the significant changes in the institution of marriage and marriage laws in recent years are the increase in the number of divorces and the implementation of "no-fault" divorce laws. A natural consequence of the increased number of divorces is the increased incidence of subsequent marriages. As more and more persons, especially those who are older and have children from previous marriages, enter into subsequent marriages, they may wish to protect their property interests for the benefit of themselves and/or their children. Such agreements can only promote or facilitate marital stability by settling the expectations and responsibilities of the parties. *Frey v. Frey*, 471 A.2d at 709.[1]

In light of the changes in marriage and marriage laws, we can see no reason to conclude that antenuptial agreements pertaining to the rights and interests of the parties upon dissolution of marriage should be regarded differently than those providing for the rights and interests of the parties upon the death of one of the spouses, so long as the same tests for validity of such agreements are met. *See Newman v. Newman*, 653 P.2d at 731; *Frey v. Frey*, 471 A.2d at 711.

We then turn to a consideration of whether the antenuptial agreement in the case at bar is valid and, therefore, enforceable. The trial court specifically found that the agreement was entered into "without fraud, coercion or undue influence by any person after the same was read, discussed and stated to be understood by all parties signatory to the execution thereof." Further, the trial judge found nothing which rendered the agreement unconscionable, and neither do we.

Agreements fixing the property rights of each party upon dissolution of the marriage and which meet the conditions set forth above, must be honored and enforced by the courts as written. A court should not substitute its judgment for that of the parties and re-write the contract. We think the Court's statement in *McNutt*, made nearly one-hundred years ago, is equally applicable today:

"Our judgment is that where the prospective wife is the owner of land in her own right, and there is no fraud, and nothing making the contract unconscionable, the courts will not strike it down. Here there was no fraud. The parties were of mature years. The subject had

---

1. The Uniform Marital Property Act, currently under consideration by our Legislature, recognizes the importance of agreements settling the property rights of the parties to a marriage by providing in § 10 for Marital Property Agreements. In its prefatory note, the Act provides:

"THIRD: The varying patterns of today's marriages are accommodated by an opportunity to create custom systems by 'marital property agreements.' Full freedom to contract with respect to virtually all property matters is possible under the Act. By a marital property agreement a couple could opt out of the provisions of the Act in whole or in part. Conversely, they could opt in by agreeing that the Act's provisions will apply to all or a part of the property they own before they became subject to its terms."

Section 10(e) of the Act specifically sanctions entry into a marital property agreement before marriage, but provides that it become effective only upon the marriage of the parties to it. Section 10(g) contains the provisions regarding enforceability of antenuptial agreements.

been long under consideration. There was deliberation, not haste. There is nothing unconscionable in the contract. It was no more than equitable that the prospective husband should, at the time he made the contract, provide that his estate should go to his children by a former wife. It is, indeed, difficult to find any principle upon which courts can set aside contracts made in good faith, with due deliberation, and by persons of mature age, even though that contract be one between a man and a woman contemplating marriage.

\*      \*      \*      \*      \*      \*

"The truth is, it is exceedingly difficult to imagine why, in any case where there is no fraud, courts should displace the judgment of contracting parties and substitute their own. No persons in the world can so well and so justly judge as the contracting parties themselves, and it is only in the strongest and clearest cases that courts should disregard their judgment, and never where there is neither positive wrong nor a fraud."

*McNutt v. McNutt*, 116 Ind. at 549–550, 19 N.E. at 117.

■ We cannot agree with the Court of Appeals' holding that the language of Ind. Code § 31–1–11.5–10 (Burns 1980) precludes the trial court's being bound by a valid antenuptial agreement. Ind.Code § 31–1–11.5–10 provides:

"(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and the custody and support of their children.

"(b) In an action for dissolution of the marriage the terms of the agreement if approved by the court shall be incorporated and merged into the decree and the parties ordered to perform them, or the court may make provisions for disposition of property, child support, mainte-

nance, and custody as provided in this chapter.

"(c) The disposition of property settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent."

Apparently relying upon the words "if approved" in subsection (b), the Court of Appeals held that the trial judge has the discretion to accept, reject, or modify *all* agreements between the parties, without respect to when those agreements were made. We find, however, that the distinction between antenuptial agreements, i.e., those entered into in contemplation of marriage, and settlement agreements, i.e., those entered into as a consequence of dissolution proceedings, cannot be ignored and that the legislature, in enacting the Dissolution of Marriage Act, intended only to vest the trial court with discretion regarding post-nuptial agreements. The statute provides that the trial court may approve agreements entered into to settle disputes "between the parties to a marriage *attendant upon* the dissolution of their marriage." (emphasis added). The words "attendant upon" refer to agreements accompanying, connected with, or a consequence of dissolution proceedings; they do not refer to those agreements made in contemplation of marriage which provide for the rights and obligations of the parties in the event of divorce or death. To the extent that *Tomlinson v. Tomlinson*, (1976) 170 Ind.App. 331, 352 N.E.2d 785, and *Flora v. Flora*, (1975) 166 Ind. App. 620, 337 N.E.2d 846 (*trans. den.*), hold otherwise, they are disapproved.

The distinction between antenuptial and post-nuptial settlement agreements was succinctly explained in *In re Marriage of Stokes*, (1979) 43 Colo.App. 461, 608 P.2d 824, as follows:

"Antenuptial agreements are intended as a means of preserving the status quo as to property interests existing before marriage; in contrast, separation agree-

ments resolve claims as to property interests which have matured because of the marriage status. In further contrast to separation agreements, antenuptial agreements are executory in nature until a marriage actually occurs; they have as their principal consideration the marriage itself; and they do not dispose of, or divide, any property, but rather fix the rights of the parties with respect to the specified property, regardless of the duration of the marriage."

608 P.2d at 828.

Moreover, were we to construe Ind.Code § 31-1-11.5-10 as did the Court of Appeals, a valid antenuptial agreement would be subject to one interpretation upon the death of a spouse and another upon the dissolution of the marriage. We see no logic in such a result.

With regard to Husband's claim that the trial court erred in awarding attorneys' fees and fees for the appraisal of marital property, we find no error. Indiana Code § 31-1-11.5-16 provides, in pertinent part:

> "The Court from time to time may order a party to pay a reasonable amount for the *cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees,* including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment." (emphasis added).

The award of an amount for attorneys' fees is within the trial court's discretion and will be reversed only when there has been an abuse of discretion. *Zebrowski and Assoc., Inc. v. City of Indianapolis,* (1983) Ind.App., 457 N.E.2d 259, 264. We find no abuse of discretion here. Further, with regard to the claim that the evidence was insufficient to support the award of attorneys' fees, there was evidence of the number of hours spent on the matter by the attorneys and of a reasonable rate for their time. Such evidence was sufficient to support the award. *See Rice v. Rice,* (1984) Ind.App., 460 N.E.2d 1228, 1231; *U.S. Aircraft Financing, Inc.*

*v. Jankovich,* (1980) Ind.App., 407 N.E.2d 287, 295. In addition, the appraisal fees constituted an expense of litigation necessary to "maintaining or defending" the dissolution proceeding. Husband has failed to show that the trial court's award constituted an abuse of discretion. *See Svetich v. Svetich,* (1981) Ind.App., 425 N.E.2d 191, 196.

Transfer is granted. The decision of the Court of Appeals is vacated, and this cause is remanded to the trial court with instructions to enter judgment consistent with this opinion.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.