In the Matter of the ESTATE OF Ira E. EDINGTON, Deceased.

Bill EDINGTON and Jerry Edington, as Co-Executors of the Estate of Ira E. Edington, Plaintiff-Appellant,

v.

Ernestine EDINGTON, Defendant-Appellee.

No. 1–785A193.

Court of Appeals of Indiana, First District.

Feb. 27, 1986.

Larry C. Thomas, Thomas & Thomas, Clinton, for plaintiff-appellant.

Patrick L. Duffy, Duffy & Duffy, Terre Haute, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

The defendant-appellee, Ernestine Edington (Ernestine), surviving spouse of Ira E. Edington, deceased, filed an election to take against the will of the decedent and for her surviving spouse allowance on April 18, 1984. The co-executors of the decedent's estate (Estate) petitioned the court on May 4, 1984, to disallow the election and allowance alleging Ernestine had waived her statutory rights in the decedent's estate in an alleged antenuptial contract. After a hearing, on February 13, 1985, the trial court ruled that Ernestine had not waived her statutory rights but had indeed made a valid election to take against the decedent's will.

## STATEMENT OF THE FACTS

Ernestine and the decedent were married on January 12, 1974, and each spouse had children during their respective prior marriages. Each spouse brought real and personal property into the marriage, and they kept ownership of their properties separate during the marriage. While each spouse spent some money on each other during the marriage, they both took care of their own personal expenses. Over two years and ten months after their marriage, with a temporary separation in between, Ernestine and the decedent executed wills in the presence of each other and their attorney on November 11, 1976. In his will the decedent left all his estate to his eight children from his prior marriage with no provision for Ernestine. Upon seeing her husband's will, Ernestine made provision leaving all her estate to her three children from her prior marriage with no provision for the decedent. Ernestine testified that it was her intent to leave the decedent nothing as his will left nothing to her. The attorney who drafted the wills testified that although he normally advised people of the legal ramifications when making wills of this type, he could not remember whether he did so in this case. Likewise, Ernestine testified that she did not remember discussing with the attorney anything about a widow's allowance or a right to elect to take against a spouse's will.

Without the knowledge of Ernestine, the decedent executed a subsequent will on September 15, 1981, specifically revoking all prior wills. This will was identical to his will dated November 11, 1976, except

for disinheriting his son, Jack, and changing one of the co-executors. Ernestine filed her election to take against the will of September 15, 1981.

In dispute was testimony regarding the presence of an oral antenuptial agreement between Ernestine and the decedent to the effect that the separate property of each spouse was to pass to their respective children from their prior marriages. Ernestine testified that she neither talked about nor had an understanding with the decedent before or during marriage as to how property should go if either died other than as provided in their wills. The decedent's children, Jerry, Jack, Audrey, Paul and William each testified to the effect that they had heard or had been told by Ernestine or the decedent about a prior oral agreement for the distribution of property. The trial court found Ernestine's testimony to be highly credible, but as to the decedent's children, Audrey had very little credibility, Jerry had less credibility, Paul was even less credible, and Jack's testimony was given virtually no weight or credibility. The trial court found it clear that the decedent's children harbored great animosity toward Ernestine which had great impact in assessing the weight to be given their testimony.

### ISSUE

The determinative issue in this case is whether there was a valid waiver of a surviving spouse's allowance and right to take against the will of the decedent.

### DISCUSSION AND DECISION

■ The Estate argues Ernestine waived her right to her elective share under an alleged antenuptial agreement. The Estate constructs an oral antenuptial agreement through the testimony of the deceased's children which it maintains was manifest in writing, by the executed wills, and through conduct, by the separate ownership and maintenance of properties, all which fortify an intent on the part of Er-

nestine and the decedent that she waive her statutory rights. As the Estate appeals from a negative judgment, we view the evidence most favorable to the trial court, and we will reverse only if it leads uncontrovertibly to a conclusion contrary to the one reached below. *Bohnke v. Estate of Bohnke* (1983), Ind.App., 454 N.E.2d 446, *trans. denied.* Here, not only is the evidence controverted by the testimony of Ernestine who denied the existence of an alleged antenuptial agreement, but the trial court found her testimony to be the most credible. To find the presence of an oral antenuptial contract, under consideration of marriage itself, not solemnized until two years and ten months after marriage, would ask us to reweigh the evidence and reassess the credibility of the witnesses which we cannot do.[1] *Bohnke, supra.*

■ The evidence further shows the ambiguous nature of the intent of Ernestine and the decedent as to the existence of an alleged agreement or an intent to be bound thereby. The evidence most favorable to the judgment of the trial court shows there never was any agreement or alleged "mutual wills" evidencing an agreement, but that Ernestine and the decedent, two years and ten months after their marriage, went to an attorney, and Ernestine, upon seeing the decedent left nothing in his will for her, executed a similar will leaving nothing to the decedent. Neither will refers to each other, to an agreement that the wills make "mutual" dispositions, to a contract underlying or incorporated into the wills, or to a contract not to revoke the wills without the consent of each other. Where two people merely execute wills at the same time with knowledge of similar or reciprocal provisions in each others will, it does not necessarily amount to an agreement for mutual wills or create a legal obligation not to revoke them. 97 C.J.S. *Wills* Sec. 1367(a) (1957). Further, if such agreement or alleged "mutual wills" were to exist, and when both parties were still

1. Since we need not decide the issue of whether oral antenuptial agreements can ever operate as a valid waiver, we express no opinion which would recognize their validity.

alive, either party could recede from the will and revoke it or make a different disposition of property upon giving proper notice to the other party to afford the other party an opportunity to make a new will or to prevent a detrimental change of position in reliance of the prior agreement. *Id.* at Sec. 1367(e). In the case at bar, the decedent without notice to or the knowledge of Ernestine, changed his will specifically revoking all prior wills which leads to the inference that he never believed that he was bound by any prior agreement or alleged mutual will scheme. A mutual will, like any other will, is revoked by the execution of a subsequent will inconsistent therewith, subject to an underlying contract which has not been established here by sufficient credible evidence and the surviving spouse may exercise her statutory elective rights under the testator's last will. *See Manrow v. Deveney* (1941), 109 Ind. App. 264, 33 N.E.2d 371.

■ The waiver of a surviving spouse's right to take against the will of a decedent is governed by IND.CODE 29–1–3–6:

"The right of election of a surviving spouse ... may be waived before or after marriage by a written contract, agreement or waiver, signed by the party waiving the right of election, after full disclosure of the nature and extent of such right, provided the thing or the promise given such party is a fair consideration under all the circumstances. The promise of marriage, in the absence of fraud, shall be a sufficient consideration in the case of an agreement made before marriage...."

The writing and disclosure requirements of this statute are further reflected in IND. CODE 29–1–2–13 which also provides for the waiver of the expectancy of a surviving spouse's allowance:

"The intestate share or other expectancy which the spouse or any other heir may be entitled to may be waived at any time by a written contract, agreement or waiver signed by the party waiving such share or expectancy. The promise of marriage, in the absence of fraud, shall be a sufficient consideration in the case of an agreement made before marriage. In all other cases such contract agreement or waiver shall be binding upon the parties thereto if executed after a full disclosure of the nature and extent of such right, and if the thing or promise given to such party is a fair consideration under all the circumstances. Except as otherwise provided therein, such waiver executed by the decedent's spouse shall be deemed a waiver of the right to elect to take against the decedent's will and the written contract, agreement, or waiver may be filed in the same manner as is provided in this article for the filing of an election."

*See Bohnke, supra.* In the case at bar, there was no evidence that Ernestine was given "full disclosure of the nature and extent" of her right to elect or the effect of a waiver thereof, under the alleged oral agreement, nor is there any such evidence in the wills themselves.

In support of its contention, the Estate cites *Boren v. Boren* (1985), Ind., 475 N.E.2d 690, for the proposition that antenuptial contracts need not mention the widow's allowance or the right to take against the will, but that it is the intention of the parties under an antenuptial agreement which governs. In *Boren*, the supreme court held that antenuptial contracts, as recognized upon the death of a spouse, pertained with equal force to the facts of that case which involved an antenuptial agreement attendant upon dissolution of marriage. The court found that since the agreement was entered into without fraud, coercion, or undue influence and the parties understood the rights and interests therein, the test for validity had been met. *Id.* at 694. The court went on to note that IND. CODE 31–1–11.5–10 recognizes the rights of parties to contract in writing prior to marriage regarding disputes which may arise between marriage partners attendant upon the dissolution of their marriage.

Where an antenuptial agreement provides for the distribution of property in the event of death, compliance with IND.CODE 29–1–2–13 and IND.CODE 29–1–3–6 is re-

quired when such agreement invokes the waiver of a surviving spouse's allowance and right to elect to take against the will of the decedent. In *Bohnke, supra,* the trial court found an oral antenuptial agreement between the decedent and the surviving spouse whereby each spouse was to keep their own separate property and neither was to make a claim against the other's estate. Following the decedent's death, the Estate in *Bohnke* asked the surviving spouse to sign a waiver of her rights to take against the decedent's will and survivor's allowance and argued that because the waiver was signed pursuant to the antenuptial agreement, the written waiver was valid. The court found that in both the oral antenuptial agreement and in the written waiver, the legislative directive that surviving spouses not be allowed to waive their rights without full disclosure was fatally absent.

In the case at bar, the Estate not only fails to present credible evidence as to the existence of an oral antenuptial agreement, there was no evidence that such alleged agreement was the result of full disclosure to Ernestine as to the nature and extent of any rights she may be waiving. Nor can we infer from the original wills or the conduct of the parties that such full disclosure was given when the wills were executed. Accordingly, the judgment of the trial court was correct as a matter of law.

Judgment affirmed.

ROBERTSON, J., concurs.

RATLIFF, J., concurs with opinion.

RATLIFF, Judge, concurring.

Even if there had been an oral antenuptial agreement between Ira Edington and Ernestine, which the trial court found not to be the case, such could not operate as a waiver of Ernestine's right to elect to take against the will. The statute clearly requires such waivers to be in writing and signed by the party waiving that right. IND.CODE 29–1–3–6. This court clearly has held that a wife's oral agreement with her husband was not a valid waiver of her rights in his estate. *Bohnke v. Estate of Bohnke* (1983), Ind.App., 454 N.E.2d 446,

*trans. denied.* Our probate code further requires a waiver of the intestate share or other expectancy of a spouse or any other heir to be in writing. IND.CODE 29–1–2–13. The alleged oral antenuptial agreement could not be valid for this purpose. *Bohnke.* Thus, never having signed any written waiver of her right of election, or having entered into any written agreement waiving such right, Ernestine did not preclude herself from electing to take against the will.

I also concur that the trial court's decision that there was no oral antenuptial agreement should be upheld, but it makes no difference because the oral agreement, had there been one, could not constitute a valid waiver of Ernestine's right to election.