FILED

Dec 22 2020, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Michael K. Wandling
Wandling & Associates
South Bend, Indiana

ATTORNEY FOR APPELLEE

Mark S. Lenyo
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Thomas Thompson,

*Appellant-Respondent,*

v.

Lora Lou Wolfram,

*Appellee-Petitioner,*

December 22, 2020

Court of Appeals Case No.
19A-DR-2622

Appeal from the St. Joseph
Superior Court

The Honorable Steven L.
Hostetler, Judge

Trial Court Cause No.
71D07-1606-DR-586

**Robb, Judge.**

# Case Summary and Issue

[1] William Thomas Thompson[1] and Lora Lou Wolfram signed a Prenuptial Agreement ("Agreement") before marrying in 1996. Wolfram filed a petition for dissolution of marriage in 2016 and the trial court entered a dissolution order in 2019. Thompson appeals the trial court's dissolution order, raising one issue for our review: whether the trial court erred when it interpreted the language of the parties' Agreement as it relates to Thompson's 401(k) and IRA accounts ("Retirement Accounts"). Concluding the trial court did not err in interpreting the Agreement and properly divided the Retirement Accounts, we affirm.

# Facts and Procedural History

[2] Thompson and Wolfram were married on July 4, 1996. Prior to their wedding, Wolfram suggested they sign a premarital agreement to protect and keep their separate property in case of divorce. Thompson contacted his brother-in-law, who is an attorney, to prepare the document. The parties signed the Agreement the day before their wedding.

[3] In part, the Agreement provided that in the event of a divorce,

> A. All assets owned by each party and in the name of that party,
> all at the time of the marriage, and which assets are maintained

---

[1] Appellant's name is spelled as both "Thompson" and "Thomson" in court documents. The Agreement signed by both parties lists Appellant's name as "Thompson," and we use this spelling in our opinion.

separately by that party after the marriage, and which are not commingled with the other party's assets, or which are not listed under the joint name of the parties, shall remain the separate assets of that party and shall not be subject to division upon divorce.

* * *

D. Any assets acquired by the parties during their marriage to each other, other than as provided herein above, shall be considered joint marital assets and subject to equal division between the parties upon divorce.

Appellant's Appendix, Volume II at 16-17.  The parties' assets and investments

at the time of the marriage were listed in Exhibits A and B attached to the

Agreement as follows:

**Financial Statement of Net Worth**
**William Thompson**
**May 1996**

### Assets

| | |
|---|---|
| 52000 Ray Dr. – Residence (Appraised 1995) | $ 109,000.00 |
| 1989 Chevy (Full size) Van conversion | $ 8,000.00 |
| 1989 Pontic Grand Am | $ 3,800.00 |
| 1986 Toyota Pick - up | $ 3,500.00 |
| 1985 Jeep CJ | $ 10,000.00 |
| 1983 18' Wellcraft Boat & Trailer | $ 5,000.00 |
| Total Assets | $ 139,300.00 |

### Investments

| | |
|---|---|
| US Savings Bonds  (Purchased Price $5000) Currant est. | $ 7,000.00 |
| C.D. @ 7% Mature 12/96   Valued as of 1/96 | $ 10,700.00 |
| C.D. @ 5.48 % Mature 12/96  Valued as of 1/96 | $ 12,000.00 |
| Monroe Bankcorp Stock - 300 shares Purch. @ $13.45/share | $ 4,035.00 |
| Gen'l Accept. Corp Stock – 300 shares Purch. @ $25.00/share | $ 5,000.00 |
| Berg Bow Shareholder - purchased price | $ 5,000.00 |
| Savings Acc:  Teacher C.U. Balance as of 3/96 ▉▉▉▉ | $ 13,790.00 |
| Savings Acc. ▉▉▉, Comm. Wide Fed'l C.U. Bal. as of 5/24 | $ 5,900.00 |
| Checking Acc:  Balances as of 5/24 | $ 400.00 |
| IRA & 401k Balance as of 3/31 | $ 97,477.00 |
| Total Investments | $ 161,302.00 |

### Liabilities (Debt)

| | |
|---|---|
| Mortgage on 52000 Ray Dr. (Mishawaka Federal) | $ (15,179.00) |
| Total Liabilities | $ (15,179.00) |

### Total Net Worth

$ 285,423.00

## Financial Statement of Net Worth
## Lora Wolfram
## June 1996

### Assets

| | | |
|---|---|---|
| 1988 Chevy Nova | $ 1,800.00 | |
| 1989 Toyota 4 Runner | $ 5,500.00 | |
| 20 Acres Farm, Woods and Lowlands (est. $1900/acre) | $ 38,000.00 | |
| Total Assets | | $ 45,300.00 |

### Investments

| | | |
|---|---|---|
| US Savings Bonds | $ 14,800.00 | |
| Life Insurance Policy | $ 10,000.00 | |
| Savings / Checking Acc: | $ 1,500.00 | |
| 401k Balance as of 3/31 | $ 2,600.00 | |
| Total Investments | | $ 28,900.00 |

### Liabilities (Debt)

| | | |
|---|---|---|
| None | $ - | |
| Total Liabilities | | $ - |

### Total Net Worth

| | |
|---|---|
| | $ 74,200.00 |

*Id.* at 19-20.

[4]  Wolfram filed a Petition for Dissolution of Marriage on June 27, 2016. All of Wolfram's separate assets and investments listed in the Agreement had since been liquidated, transferred into another format, or placed in both names. Of Thompson's separate property listed in the Agreement, the 1985 Jeep CJ, Monroe Bankcorp Stock, and his Retirement Accounts were still in existence and in only Thompson's name at the time of the parties' dissolution hearing. As of June 1, 2016, Thompson's Retirement Accounts were valued at $994,523.00.

In September 2019, the trial court held a bench trial. The parties agreed about the extent of their property and further agreed their separate pensions had not been included in the Agreement. They disagreed about how to treat Thompson's Retirement Accounts under the Agreement. Thompson argued no part of his Retirement Accounts was divisible marital property, and Wolfram argued that, although the $97,477.00 starting value of the Retirement Accounts at the time of marriage should be set aside to Thompson, the remaining value in the Retirement Accounts should be considered property of the marriage to be divided equally.

The trial court subsequently entered a Decree of Dissolution of Marriage with specific findings of fact and conclusions of law at Thompson's request. The trial court agreed with Wolfram's position regarding the Retirement Accounts and ordered the increase in Thompson's Retirement Accounts since the marriage to be split equally between the parties, concluding:

> The Prenuptial Agreement the parties to this case signed did not exclude from the marital estate to be divided either contributions made during the marriage or earnings and appreciation. Therefore, the Prenuptial Agreement by default requires that such contributions, earnings and appreciation be included in the marital estate to be divided equally.

Appealed Order at 6.  The trial court therefore awarded Thompson $97,477.00 plus one-half of the appreciation to his Retirement Accounts and awarded Wolfram the remaining one-half of the appreciation.[2]

[7]  The trial court also addressed the parties' separate pension accounts, ruling that both parties' pension plans would be subject to division as marital property because they were not mentioned in the Agreement.  The trial court noted, however, that although the two pension accounts are subject to division, there was insufficient evidence presented during trial to allow the court to properly assess the value of the pension accounts.  Therefore, the trial court scheduled a future hearing to determine the value and distribution of the pensions.

[8]  Thompson appealed from the trial court's decree of dissolution.  His Notice of Appeal designates this as an Appeal from a Final Judgment. However, pursuant to Indiana Appellate Rule 2(H)(1), a judgment is not final unless the order adjudicates all claims as to all parties.  Thompson's appeal is not from a final judgment because the trial court's order did not distribute the parties' pensions.  Instead, the trial court set an additional evidentiary hearing to be held on December 18, 2019, regarding the pensions.  Nonetheless, Thompson's appeal is an interlocutory appeal of right because the trial court's order required

---

[2] The trial court's order states that Wolfram is awarded "One-Half of Husband's Retirement Savings Account of $994,523.00 (less starting amount of $97,477.00) plus one-half of any increase since [date of filing]" for a total award of $448,477.00 from the Retirement Accounts.  Appealed Order at 9.  Although that math does not seem to be correct ($994,523.00 - $97,477 / 2 = $448,523.00), neither party raises this as an issue, and we assume the final amount represents any change in the accounts after the petition was filed.

Thompson to pay Wolfram an equalization payment within thirty days of the appealed order. *See* Ind. Appellate Rule 14(A)(1) (permitting parties to file interlocutory appeal from an order for payment of money).

# Discussion and Decision

## I. Standard of Review

When a trial court's decree of dissolution is accompanied by findings of fact, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). In determining whether the findings or judgment are clearly erroneous, we first determine whether the evidence supports the findings and, second, whether those findings support the trial court's conclusions of law and judgment. *Hurt v. Hurt*, 920 N.E.2d 688, 691 (Ind. Ct. App. 2010). The trial court's findings control unless there are no facts in the record to support them, either directly or by inference, but we review legal conclusions de novo. *Baglan v. Baglan*, 137 N.E.3d 271, 275 (Ind. Ct. App. 2019). We will set aside a trial court's judgment only if it is clearly erroneous, and a judgment is "clearly erroneous" if, after review of the evidence most favorable to it, we are firmly convinced that a mistake has been made. *Id.* When a party has requested special findings of fact and conclusions thereon pursuant to Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*.

## II. Division of Thompson's Retirement Accounts

[10] Indiana has adopted the one-pot theory of marital property, in which all property owned by either spouse before the marriage, acquired by either spouse in his or her own right after the marriage and prior to the final separation of the parties, or acquired by their joint efforts is part of the marital estate. Ind. Code § 31-15-7-4(a). This one-pot theory ensures that all property from both spouses is subject to the trial court's power to divide and award, *Tyagi v. Tyagi*, 142 N.E.3d 960, 964 (Ind. Ct. App. 2020), *trans. denied*, under the presumption that an equal split is just and reasonable, Ind. Code § 31-15-7-5. However, as an alternative to the inclusion of all property in the marital estate per statute, prospective spouses may enter a legally recognized premarital agreement, and "as long as [it is] entered into freely and without fraud, duress, or misrepresentation, and [is] not unconscionable[,]" it will be recognized as a valid contract. *Rider v. Rider*, 669 N.E.2d 160, 162 (Ind. 1996); *see* Ind. Code ch. 31-11-3 (the Uniform Premarital Agreement Act, applicable to premarital agreements executed on or after July 1, 1995).[3]

[11] Premarital agreements are legal contracts entered into prior to marriage to settle the interest each spouse has in the property of the other and therefore, standard principles of contract formation and interpretation apply to such agreements.

---

[3] Premarital, prenuptial, and antenuptial are all terms used to describe an agreement entered into in contemplation of marriage. *See Beaman v. Beaman*, 844 N.E.2d 525, 530 (Ind. Ct. App. 2006). Because Indiana Code chapter 31-11-3 adopts the Uniform *Premarital* Agreement Act, we use the term "premarital" throughout.

*Fetters v. Fetters*, 26 N.E.3d 1016, 1020 (Ind. Ct. App. 2015), *trans. denied*. "To interpret a contract, a court first considers the parties' intent as expressed in the language of the contract." *Schmidt v. Schmidt*, 812 N.E.2d 1074, 1080 (Ind. Ct. App. 2004). A court should read all of the provisions "as a whole to accept an interpretation that harmonizes the contract's words and phrases and gives effect to the parties' intentions as established at the time they entered the contract." *Id*. As premarital agreements are favored by the law, they will be liberally construed to realize the parties' intentions. *Perrill v. Perrill*, 126 N.E.3d 834, 840 (Ind. Ct. App. 2019), *trans. denied*. If the terms of the contract are unambiguous, "the intent of the parties must be determined from the four corners of the document." *Schmidt*, 812 N.E.2d at 1080. If the terms are ambiguous, the court may consider parol evidence to clarify the ambiguity. *McCord v. McCord*, 852 N.E.2d 35, 43 (Ind. Ct. App. 2006), *trans. denied*. "The terms of a contract are ambiguous only when reasonably intelligent persons would honestly differ as to the meaning of those terms." *Schmidt*, 812 N.E.2d at 1080.

[12] Thompson asserts that the trial court erred by failing to properly interpret the Agreement which contains the following relevant provisions:

> William Thompson (Bill) and Lora Wolfram (Lora), for the mutual promises herein contained and other valuable considerations not herein expressed, do hereby freely and voluntarily enter into this Prenuptial Agreement, and they do hereby acknowledge and agree as follows:
>
> 1. They plan to be married on July 4, 1996.

2. Attached hereto as Exhibit "A," and made a part hereof, is the Financial Statement of Net Worth as provided by Bill.

3. Attached hereto as Exhibit "B," and made a part hereof, is the Financial Statement of Net Worth as provided by Lora.

4. In the event their marriage should end in divorce, they agree as follows:

A. All assets owned by each party and in the name of that party, all at the time of the marriage, and which assets are maintained separately by that party after the marriage, and which are not commingled with the other party's assets, or which are not listed under the joint name of the parties, shall remain the separate assets of that party and shall not be subject to division upon divorce.

B. Personal property, to include furniture, tools, and antiques brought into the marriage by a party shall remain with that party and not be subject to division upon divorce.

C. Any real estate owned, or to be owned in the future, in the joint names of the parties shall be considered equal ownership and upon divorce shall be subject to equal division between the parties.

D. Any assets acquired by the parties during their marriage to each other, other than as provided herein above, shall be considered joint marital assets and subject to equal division between the parties upon divorce.

Appellant's App., Vol. II at 16-17.

[13]     The sole point of contention here is the disposition of Thompson's Retirement Accounts.[4]  Thompson acknowledges that the Agreement "is silent as to how future contributions, earnings, or appreciation of assets should be handled." Appellant's Brief at 8.  He argues, however, that the parties' intent at the time the Agreement was drafted was "to protect their assets that they had before the marriage[.]"  *Id.*  He therefore argues that Section 4.A. of the Agreement protects the current value of his Retirement Accounts and not just the value at the time the Agreement was entered.  Wolfram counters that only the value of the Retirement Accounts at the time of the Agreement is governed by Section 4.A. and any appreciation is governed by Section 4.D. and should be considered an asset acquired during marriage subject to division.

[14]     In *McCord*, the parties entered into a premarital agreement and attached thereto exhibits listing their assets and the values of each.  One of the husband's listed assets was a 401(k) valued at $11,000.  By the time of the parties' divorce, the 401(k) had a value of $73,000, which included contributions made during the marriage and accumulated earnings.  As in this case, the trial court awarded half of the increase in the 401(k) since marriage to the wife, and the husband appealed.  Unlike this case, however, the agreement provided in part that each

---

[4] Thompson's brief occasionally references his pension in the same breath as his IRA and 401(k).  Although he does not specifically challenge the trial court's decision that the parties' pensions are a marital asset subject to division, to the extent his aggregation of all the accounts is meant to imply the pensions are also covered by the Agreement and should have been considered separate property, he is mistaken.  The parties admitted at trial that they did not include their respective pensions in the financial statements they attached to the Agreement and therefore, the trial court correctly determined the pensions are not covered by the Agreement and were subject to division as marital assets.

party "recognizes that the property of the other may increase through earnings, appreciate [sic], further investments, inheritances, and the like and is entering into this prenuptial agreement regardless of the value of such additions." 852 N.E.2d at 39. Based on this provision, we agreed with the husband that the trial court erred, concluding the agreement was clear that the parties intended husband's 401(k), including any growth for any reason, to remain his separate property. *Id.* at 43; *see also In re Marriage of Conner*, 713 N.E.2d 883, 889 (Ind. Ct. App. 1999) (holding the trial court properly excluded only IRA contributions from the marital estate where the parties' premarital agreement specifically excluded contributions from the marital estate but was silent as to earnings). Here, the Agreement is silent as to how any increases of any kind in Thompson's Retirement Accounts should be treated.

[15]  Premarital agreements "are intended as a means of preserving the status quo as to property interests existing before marriage[.]" *In re Marriage of Boren*, 475 N.E.2d 690, 695 (Ind. 1985) (quoting *In re Marriage of Stokes*, 608 P.2d 824, 828 (Colo. App. 1979)). And as stated above, in interpreting a contract, we first consider the parties' intent "as expressed in the language of the contract." *Schmidt*, 812 N.E.2d at 1080. The specific property Thompson and Wolfram owned at the time of the marriage and intended to protect via the Agreement is listed in their respective financial statements and attached to the Agreement as exhibits. Thompson's financial statement showed that he had an IRA and 401(k) with a balance of $97,477.00 as of March 31, 1996. *See* Appellant's App., Vol. II at 19 ("Exhibit A"). Pursuant to Section 4.A. of the Agreement,

$97,477.00 was the property interest existing at the time of the marriage and that was the separate property interest intended to be protected in order to preserve the status quo. *See Boren*, 475 N.E.2d at 695; *see also* Transcript, Volume 2 at 46 (Thompson testifying that what "[a]ll at the time of the marriage" in Section 4.A. means to him is, "*what the value was* at the time of the marriage") (emphasis added). Had the parties intended to exclude from the marital pot any increase above the specific values listed in the exhibits, the Agreement could have provided that the property outlined in the financial statements *including any increase in value through whatever means* (or some similar language) would remain a party's separate property. *See, e.g., McCord*, 852 N.E.2d at 39. Instead, the Retirement Accounts as listed on Exhibit A included a specific value as of a certain date with no provision for how to treat increases in that value through contributions or otherwise. To the extent the specific words used in the Agreement create an ambiguity, we construe them against the drafter – here, Thompson, by his counsel. *See Buskirk v. Buskirk*, 86 N.E.3d 217, 224 (Ind. Ct. App. 2017).

[16] The dissent argues this result interjects language that is not in the Agreement. On the contrary, the decision is firmly grounded in the actual language and organization of the Agreement. Section 4.A. states that "All assets owned by each party and in the name of that party, all at the time of the marriage, . . . shall remain the separate assets of that party and shall not be subject to division upon divorce." Appellant's App., Vol. II at 17. "[A]ll at the time of marriage" modifies "assets owned by each party." Thompson's Retirement Accounts with

a balance of $97,477.00 at the time of the marriage remained his separate assets. But pursuant to Section 4.D., the increase in the value of the Retirement Accounts during the marriage is an asset "other than as provided" in Section 4.A. Therefore, the trial court rightly considered the increase to be joint marital property subject to equal division upon the parties' divorce. Appellant's App., Vol. II at 17.[5]

# Conclusion

[17] The plain language of the Agreement indicates the then-current value of Thompson's Retirement Accounts was his separate property and the trial court correctly concluded the increase in value from that date was marital property subject to division upon divorce. Accordingly, we affirm the trial court's judgment, including its treatment of Thompson's Retirement Accounts.

[18] Affirmed.

Vaidik, J., concurs.

May, J., dissents with opinion.

---

[5] Although the trial court did not divide the increase in value of the Monroe Bankcorp stock, neither party argues on appeal that was an abuse of discretion. As it is not an issue in this appeal, we decline to comment on the trial court's treatment of it.

| | |
|---|---|
| William Thomas Thompson<br>*Appellant-Plaintiff*,<br><br>v.<br><br>Lora Lou Wolfram,<br>*Appellee-Defendant*. | Court of Appeals Case No.<br>19A-DR-2622 |

**May, Judge, dissenting.**

[1] I respectfully dissent. I believe the plain language of the prenuptial agreement dictates that Thompson's retirement account remains separate and to rule otherwise turns into a charade the time-honored process of protecting one's assets in the event of dissolution. I also believe this case is distinguishable from *McCord* and *Conner*.

[2] The plain language of Section 4.D. states: "Any assets acquired by the parties during the marriage to each other, OTHER THAN AS PROVIDED HEREINABOVE, shall be considered joint marital assets and subject to equal division between the parties upon divorce." (App. Vol. II at 17) (emphasis added). Section 4.A. was "hereinabove" and "provided":

> All assets owned by either party and in the name of that party, all at the time of the marriage, in which assets are maintained separately by that party after the marriage, and which are not commingled with any other party's assets, or which are not listed under the joint name of the parties, shall remain the separate assets of that party and shall not be subjected to the division upon divorce.

(*Id*. at 16.) The retirement asset in question was listed in Exhibit A, was owned in just Thompson's name at the time of the marriage, and was maintained separately thereafter, without being commingled. Had the retirement asset not been listed in Exhibit A, there is no question that Wolfram would be entitled to her share of the value. However, because it WAS listed, Section 4.D. precludes it from being shared by Wolfram. Ruling otherwise vitiates the intent behind signing a prenuptial agreement.

[3] Nor do the *McCord* and *Conner* cases require the result reached by the majority as both were decided based on specific language in the prenuptial agreement directing the division of certain future earnings on properties listed in those agreements. In *McCord*, we held that the husband's 401K, including its earnings, was his sole property because the prenuptial agreement contained the language, "each party recognizes that the property of the other may increase through earnings, appreciate [sic], further investments, inheritances, and the like and is entering into this prenuptial agreement regardless of the value of such additions." 852 N.E.2d at 43. Similarly in *Conner*, our court affirmed the trial court's inclusion of the earnings and appreciation associated with the husband's IRA account into the marital pot, while the contributions to the IRA

account during the marriage were the husband's sole property because the prenuptial agreement contained controlling language that differentiated contributions as the only part of the asset for direct exclusion from division. 713 N.E.2d at 889.

[4] Unlike *McCord* and *Conner*, the Agreement here made no specific mention of contributions, earnings, or appreciation, and it did not attempt to parcel out Thompson's assets into distinct categories. Because the Agreement does not contain language intended to include or exclude particular monies, we must look to the parties' overall intent when initially drafting their Agreement. As stated in the majority opinion, we must rely on the language contained within the four corners of the agreement, *Schmidt*, 812 N.E.2d at 1080, and give the terms within the contract their plain and ordinary meaning. *Rodriguez v. Rodriguez*, 818 N.E.2d 993, 995-996 (Ind. Ct. App. 2004), *trans. denied*.

[5] The plain language of the Agreement indicates that each party wished to regard their respective assets as a whole, with an inherent understanding that assets inevitably appreciate or depreciate throughout the life of the asset.[6] Both parties had the capacity to understand that retirement accounts, when contributed to, tend to gain value throughout the marriage. Thompson's Retirement Accounts

---

[6] Note, for example, that the trial court assigned to Thompson, with a fair market value of $0.00, all shares of the Monroe Bank/Old National Bank stocks. The court did not divide between the parties the $1712.00 in appreciation that occurred between the value at the signing of the Agreement ($4,035.00) and the value at dissolution ($5,747.00). The court simply assigned the entirety of the asset to Thompson in accordance with the language of Section 4.A. of the Agreement.

were specifically introduced into the marriage as a separate asset, and they were further maintained separately from Wolfram throughout the duration of the marriage, complying with Sections 4.A. and 4.D. Thus, the majority's decision to divide the contribution and earnings as a marital asset goes against the clear intent of the parties.

[6] Other jurisdictions have faced similar dilemmas and held that when a prenuptial agreement is silent as to certain aspects of properties, such as earnings, contributions, or appreciation, those aspects are treated as part of the whole property and therefore should be divided as the property was to be divided under the agreement. *See*, *e.g., Brummund v. Brummund*, 785 N.W.2d 182, 183 (N.D. 2010) (each party unambiguously waived any interest in the separately listed property of the other, particularly when no language was included to restrict the separate interest in the property to its value and appreciation on a specific date); *see also Boschetto v. Boschetto*, 224 A.3d 824, 830 (R.I. 2020) (the parties' premarital agreement contained a provision entitling the Husband to one-half of the Wife's 401K contributions made during their marriage, but was silent as to appreciation in value; because the plain language of the parties' premarital agreement only referenced contributions, Husband was not entitled to any appreciation of value).

[7] I must diverge from the majority's reasoning because I believe the plain language of the Agreement dictates that Thompson's Retirement Accounts and any contributions and earnings throughout the duration of the marriage must remain as his separate property in their entirety in order to maintain the

integrity of the Agreement and uphold the intention of the parties. To interject language that is simply not present into the Agreement controverts not only the intent of the parties but well-established contract law. Based thereon, I respectfully dissent.